Appeal from Third District.

## BOYD v. SAN PEDRO, L. A. & S. L. R. CO.

No. 2658.   Decided January 22, 1915 (146 Pac. 282).

1. MASTER AND SERVANT—ACTION FOR DEATH—QUESTION FOR JURY
   CONTRIBUTORY NEGLIGENCE. In an action for the death of a
   railroad flagman struck by an engine after he had stopped it
   to report a defective rail, *held*, on the evidence, that his
   contributory negligence was for the jury. (Page 454.)

2. MASTER AND SERVANT—ACTION FOR DEATH—SUFFICIENCY OF EVI-
   DENCE—ASSUMPTION OF RISK. In such action, evidence *held*
   not to show decedent's assumption of risk. (Page 454.)

3. TRIAL—MOTION FOR NONSUIT—REQUISITES. A motion for a
   nonsuit on the ground that plaintiff's evidence, in an action
   for the death of her decedent, a flagman on defendant's line,
   did not show "a *prima facie* case," was too general. (Page
   454.)

4. MASTER AND SERVANT—ACTION FOR INJURY—QUESTION FOR JURY
   —WARNING BEFORE STARTING TRAIN. In an action for the death
   of a railroad flagman struck by an engine which started after
   he had stopped it to report a defective rail ahead, *held*, that
   whether the defendant, in the exercise of ordinary care, should
   have rung the bell or sounded the whistle before starting the
   engine, was for the jury. (Page 454.)

5. APPEAL AND ERROR—MOTION FOR NONSUIT—REVIEW. In deter-
   mining whether error was committed in overruling a motion
   for a nonsuit, the Supreme Court is required to consider only
   the evidence and the record before the court when the motion
   was made and overruled. (Page 455.)

6. APPEAL AND ERROR—HARMLESS ERROR. Any error in denying
   motion for nonsuit for insufficiency of the evidence is cured
   where evidence subsequently introduced by defendant supplies
   the deficiency. (Page 455.)

7. MASTER AND SERVANT—ACTION FOR INJURY—BURDEN OF PROOF—
   PROXIMATE CAUSE. In an action for the death of her decedent,
   a flagman in defendant's employ, plaintiff had the burden of
   showing that the alleged negligence was the proximate or
   direct cause of his death. (Page 455.)

8. TRIAL—MOTION FOR NONSUIT—EXCEPTION—WAIVER. Under the
   express provisions of Comp. Laws 1907, section 3181, defendant,
   who offered evidence after the overruling of his motion for

nonsuit, might nevertheless present the ruling on his exception for review, and be entitled to have it reviewed on the evidence alone adduced before the court when the motion was made and overruled. (Page 455.)

9.   APPEAL AND ERROR—HARMLESS ERROR—INSUFFICIENCY OF EVIDENCE—CURE BY OTHER EVIDENCE.  Error in overruling defendant's motion for a nonsuit on the ground that plaintiff's evidence had failed to show that the alleged negligence was the proximate cause of the death of her decedent, where the jury from such evidence might have found negligence in starting the train without warning, was cured and rendered harmless by defendant's evidence, from which the jury might have found that such negligence was the proximate cause of his death, notwithstanding Comp. Laws 1907, section 3181, providing that the offering of evidence after the overruling of a motion for a nonsuit shall not be a waiver of defendant's exception thereby, since the waiver of the exception is one thing and the prejudicial effect of the ruling is a different thing. ·(Page 455.)

10.   TRIAL — INSTRUCTIONS — REQUESTS.  A requested charge was properly refused where the charge given covered all that was proper and necessary to charge, and was itself correct. (Page 457.)

11.   APPEAL AND ERROR—EXCEPTIONS—SCOPE.  A portion of a charge not excepted to, and to which the court's attention was not directed by the exception, presented no question on review. (Page 457.)

12.   TRIAL—INSTRUCTIONS—EVIDENCE—NEGLIGENCE.  In an action for the death of a servant, an instruction that "the mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence or the plaintiff with contributory negligence" was not objectionable as implying that the happening of the accident was some evidence of defendant's negligence. (Page 457.)

13.   MASTER AND SERVANT — MASTER'S DUTY — WARNING — CUSTOM.  That it was not customary nor required by defendant's rules to sound the whistle before starting a train would not relieve defendant from liability for the death of a flagman resulting from its failure to sound the whistle.[1]  (Page 458.)

[1]Meyers v. Railroad Co., 39 Utah 198; 116 Pac. 1119.

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Nettie V. Boyd against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Dana T. Smith* for appellant.

*T. Marioneaux, B. N. C. Stott,* and *Powers & Riler,* for respondent.

STRAUP, C. J.

The plaintiff's husband was in the employ of the defendant as a track walker. His duties were to inspect the track, report defects, and to flag trains. It is alleged that he was run over and killed near Mammoth by the defendant's train. The plaintiff had judgment. The defendant appeals.

The alleged errors are refusals to grant a nonsuit, to direct a verdict, and to charge as requested. The plaintiff adduced evidence to show that the defendant was operating a train consisting of an engine, a combination baggage and express car, and a passenger coach from Eureka to Silver City, Utah. Near Mammoth the deceased flagged the train. It stopped. He, on the engineer's side, approached the conductor, who had come out on the front steps of the passenger coach, and told him that there was a broken rail ahead. The conductor inquired if it was very bad. The deceased replied that the conductor had better go and examine it. The conductor replied that he would as soon as he got his coat, and re-entered the car for that purpose. While he was getting his coat the train started, without ringing the engine bell or sounding the whistle or giving any warnings or signals, or, as far as observed, without the conductor indicating or doing anything to cause it to start. It ran three or four car lengths and then stopped. The conductor, leaving it going forward, and on reaching the engine, exclaimed: "My God, we have killed the old section foreman" (plaintiff's husband). The de-

ceased's body was found dragged and crushed under the engine. There was much snow on the ground. Along the sides of the track where the ground was lower than the track it was nearly knee deep. Marks in the snow in the middle of the track indicated the distance the body had been dragged under the engine. The deceased's cap and gloves were found in the middle of the track where the dragging began. Two of the defendant's rules were put in evidence; one, ''The engine bell must be rung when the engine is about to move''; the other, ''A train must not start until the proper signal is given by its conductor.'' The alleged negligence is a failure to ring the bell or sound the whistle or give warnings or signals before the train was started, or to observe the presence of the deceased.

The grounds of nonsuit are want of evidence (1) to show ''a *prima facie* case''; (2) to show ''that the alleged negligence was the proximate or direct cause of the death''; and (3) to show a duty to ring the bell or sound the whistle or to give warnings before starting the train. On the overruling of the motion the defendant adduced its evidence. It shows that, when the train was flagged and stopped, the deceased first approached the engineer and told him there was a broken rail down by the bridge or curve. That was about 400 feet away. He then approached the conductor on the steps of the passenger coach and reported the broken rail to him and stated he thought the train could pass over it, but that the conductor had better go and examine it. The conductor replied that he would as soon as he got his coat and shoes, asked the deceased to get on the passenger coach, and stated that they would ''drop down a few car lengths.'' The deceased replied that he would walk. The conductor hallooed to the engineer to ''drop down a few car lengths,'' and gave him a signal to start, and then re-entered the car to get his coat and shoes. Before that the deceased had turned back towards the engine. It was still standing. He told the engineer, ''I think if you will move down slowly you can get over the broken rail.'' Shortly thereafter—some of the defendant's witnesses testified about a minute and a half after the signal to start was given—the train was started. The en-

gineer and the fireman testified that the bell was rung. They did not testify that the whistle was blown. The grade was down grade. To start the train required merely a release of the brakes. It started and moved without much, if any, noise. Just before it was started the engineer looked to the side of the engine where he last saw the deceased, and also ahead, but saw nothing of him. It was testified to that if the deceased then was on the track, and within forty or fifty feet ahead of the engine, the engineer could not see him. In that connection the engineer testified in response to questions asked him:

"Q. As the engine started, were you keeping a lookout? A. Yes, I was looking ahead. Q. Looking ahead, did you observe Mr. Boyd? A. No, I probably gave him time enough to have got out of my sight. I looked out the front of the engine before I started. I did not know what had become of him. Q. When you started, did you look out of the window? A. Yes, sir. Q. You didn't see him along the side, did you? A. No, sir. Q. If he had been off at the side you could have seen him? A. Yes, sir; there was nothing to prevent my seeing him if he had been off to the side, if he was outside the rails. Q. Did you look out of the cab? A. Yes, sir. Q. Then you started? A. Yes, sir. Q. You didn't see him? A. No, sir. Q. Did you look out of the cab as soon as you started? A. Yes, sir. Q. You did not see Boyd anywhere? A. No, sir. Q. At that time, of course, he could have been at the front of the engine? A. He could have been. Q. And on the track and you not see him? A. Yes, sir. Q. And you knew he might be anywhere within forty or fifty feet of the pilot, and yet you not see him? A. Yes, sir; or fifty feet ahead of the engine before I could see him."

The conductor testified that, when he gave the signal to start, the deceased was on his way back between the passenger coach and the engine. He further testified that under the defendant's rules, "when a signal is given by the conductor to proceed, the engineer shall sound two blasts of the whistle, unless there is another method of answering the conductor's signal provided for by the rules, and that no other method

for the engineer to answer the conductor's proceed signal was provided, except two short blasts of the whistle.'' None were given. The train, when it started, moved slowly, at a speed less than one ordinarily walks. It ran about 200 feet when the engineer noticed peculiar movements of the snow under the engine, as though the brakebeam had fallen. Leaning out of his cab he discovered the deceased's foot projecting from under the engine. The train was stopped at once. The conductor left it and, going forward, found the body of the deceased dragged and crushed under the engine.

The grounds of the motion to direct a verdict are that the deceased was guilty of contributory negligence and assumed the risk ''of being run over by the train.''

Upon the stated grounds, that motion was properly overruled. Under all the circumstances, the question of contributory negligence was for the jury and not the court.

Upon the evidence there is nothing to the claim of assumption of risk even as to require a submission of such a question to the jury. There is nothing to support it, except a confusion of terms, assumption of risk with contributory negligence.

The chief complaint, however, made by the defendant, is that it was entitled to prevail on its motion for a nonsuit. There is nothing to the first stated ground. It is too general. Nor to the third. The law itself imposed a duty to use ordinary care, and whether, in the exercise of it, warnings ought to have been given by ringing the bell or sounding the whistle before starting the train was for the jury and not the court. The second ground is more serious, sufficiency of the evidence, when the plaintiff rested, and when the motion was interposed, to show that the alleged negligence was the proximate cause of the injury and death. Let it be assumed that that evidence was not sufficient. How stands the case when all the evidence was in? If, upon the whole of the evidence, sufficient facts were shown to justify a finding that the defendant's alleged negligence was the direct and proximate cause, then was the plaintiff, as to that issue,

entitled to go to the jury, though her evidence alone was not sufficient?

True, in determining whether error was committed or not in overruling the motion for a nonsuit, we are required to consider only that evidence and the record before the court at the time the motion was interposed and the ruling was made. Causes, however, are not reversed for mere error. They are reversed for prejudicial error. To entitle the defendant to prevail, he must show both error and prejudice. Let it be conceded error was committed in overruling the motion.

Let it further be assumed, and, as is the general rule, that from error—depending, of course, somewhat upon the character of it prejudice will be presumed, and that the presumption will prevail until, upon the record, it is clearly shown that the error did no harm. The defendant, by the record, has presented, not only plaintiff's evidence, but its evidence as well. If defendant's evidence, as to proximate cause, supplied what in such respect was lacking in plaintiff's evidence, then was the error cured and rendered harmless.

As to that issue the plaintiff, of course, had the burden. If she failed to adduce sufficient evidence to support her allegations in that respect, but if the defendant itself proved them, it cannot complain because the case, as to that issue, was let to the jury, just as a defendant on the issue of contributory negligence is entitled to go to the jury, though no evidence on the subject was offered by him, if nevertheless sufficient facts were shown by the plaintiff's evidence to justify a finding of such negligence.

Such holding is not in conflict with the Code (C. L. 1907, section 3181):

"That the offering of evidence after the overruling of a motion for a nonsuit shall not be deemed or considered a waiver of the exception taken by the defendant to the order overruling such motion."

The waiver of the exception and of the ruling is one thing. The prejudicial effect of the ruling is another and a different thing. Though the defendant offered evidence

after the overruling of the motion, he may nevertheless present the ruling on his exception for review, and is entitled to have it reviewed on the evidence alone adduced before the court, when the motion was interposed and the ruling made. Should it be held, as we here assume, that the ruling was erroneous, there still arises the further question of prejudice; and, if what was wanting in plaintiff's case was supplied by the defendant himself, then was the error cured. So the defendant, while he does not waive his exception by putting in his evidence, nevertheless takes the chance of aiding the plaintiff's case. *Weber* v. *Kansas City*, 100 Mo. 194; 12 S. W. 804; 13 S. W. 587; 7 L. R. A. 819; 18 Am. St. Rep. 541; *Stephens* v. *Scott*, 43 Kan. 285; 23 Pac. 555. What thus, on the whole evidence, is the situation? Upon plaintiff's evidence the jury could have found that the deceased assumed that the train would not proceed until he and the conductor had gone forward and examined the broken rail; but before that was done the train was started without signals or warnings of any kind, and that that was negligent. Upon the defendant's evidence the jury could have found that when the deceased left the conductor at the passenger coach, and while the train was standing, and before it moved, he, on his way to the broken rail, walked past the engine and then on the track; that the engineer before starting, looking to the side of the engine where he last saw the deceased, and also looking ahead of it, saw nothing of him; that the deceased then was on the track within forty or fifty feet ahead of the engine walking down towards the broken rail; that the engineer, looking and seeing nothing of him, ought to have anticipated that he then was on the track in front of the engine and ought to have given him warning before starting the train; but that, according to plaintiff's evidence, no such warning was given. This, of course, is taking some of the facts as testified to by the plaintiff's witnesses, and some as testified to by the defendant's witnesses. But the jury had the right to so consider them. Thus, on the plaintiff's evidence, the jury could find negligence in starting the train without giving warnings, and upon the defendant's evidence could find that that negligence was the proximate cause of

the injury and death.   Since the defendant so aided the plaintiff's case, the error overruling the motion for nonsuit was cured.   For if on all the evidence, no matter by whom or when offered, there was a case to go to the jury, the defendant cannot complain because the court refused to withhold it from them.

Complaint is made of the refusal of the court to charge on damages as requested by the defendant.   No complaint is made of the charge which the court gave on that subject.   The request is lengthy, covering about three printed pages of the abstract.   Portions of it are argumentative.   Some of it eliminates essential and proper elements to charge, and some contains matter improper to charge.   Some of it the court gave.   As a whole, the request is faulty.   The charge, which the court gave, covers all that was proper and necessary to charge, contains no objectionable or unnecessary matter, and is, as we think, not only correct, but an unusually clear and concise statement of the law on the question.

The court also gave this:

"You are further instructed that the mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence or the plaintiff with contributory negligence, and in this case, if you should find that the weight of the evidence is in favor of the defendant, or that it is equally balanced upon the question of the defendant's negligence, then you should find the issue in favor of the defendant; *but if you should find that the weight of the evidence is in favor of the plaintiff, or that it is equally balanced on the question of the deceased's contributory negligence or assumption of risk, then you should find that issue in favor of the plaintiff."*

An exception was taken to that portion italicized.   The alleged error here pointed out and argued is not that, but to the first part of the paragraph, where the court stated that:

"The mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence or the plaintiff (deceased) with contributory negligence."

What is urged against it is that by the use of the word "sufficient" the thought is implied that the happening of the accident was some evidence to show negligence on the part of the defendant. It is enough to say that that portion was not excepted to nor the court's attention directed to it by the exception. Then there is no substance to the argument. The fair meaning of the charge is that negligence of neither party is to be inferred from the mere happening of the accident. The argument, however, makes the charge as strong against the plaintiff as the defendant. The defendant cannot maintain that by the charge the jury understood that the happening of the accident was some evidence to show the defendant's negligence but not to show contributory negligence. The court said it was not sufficient to show either. That certainly does not imply that it is some evidence to show the defendant's negligence but not contributory negligence.

A request was asked on the theory that, if it was not customary nor required by the defendant's rules to sound the whistle before starting the train, then the defendant could not be held responsible for a failure to sound the whistle. Complaint is made of the court's refusal to give it. It was properly refused. *Meyers v. Railroad Co.*, 39 Utah, 198; 116 Pac. 1119.

Further complaint is made of refusals to give divers other requests. Nothing is said in support of the requests, except that "they state the law and ought to have been given"—a conclusion clear enough, but a demonstration somewhat imperfect. Most of them relate to questions of contributory negligence and were fully covered by the charge. Others go to questions that no duty, as matter of law, was imposed to give warnings before starting the train. These were faulty and were properly refused.

On the record we find no reversible error. The judgment is therefore affirmed with costs.

FRICK and McCARTY, JJ., concur.