## CLAYTON v. METROPOLITAN LIFE INS. CO.

No. 5993. Decided December 29, 1938. (85 P. 2d 819.)

332

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for appellant.

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for respondent.

FOLLAND, Chief Justice.

The defendant has appealed from an adverse verdict and judgment in the Third Judicial District Court for Salt Lake County where a trial de novo was held upon appeal thence by the plaintiff after a judgment of no cause of action had been rendered in the City Court of Salt Lake City. The action is for damages for total and partial disability resulting from injuries allegedly within the terms of an accident policy issued by the defendant.

The complaint alleges that while plaintiff was mowing that portion of his lawn which slopes toward a sidewalk his feet slipped from under him, hurtling him to the sidewalk while he maintained his hold on the lawnmower, the handle of which hit the sidewalk with one point and his abdomen fell forcibly against the other point, causing sharp pain and an injury which partially disabled him until an operation was performed during which his appendix was removed, resulting in total disability and further partial disability during convalescence. It was alleged that a certain policy issued by defendant entitled plaintiff to compensation for disability and medical expenses as follows: Medical expenses and hospitalization, $100; total disability for about four weeks at $25 per week; and partial disability for about eight weeks at $12.50 per week.

The answer admitted issuance of the policy but denied generally the other allegations. The jury rendered a verdict

for $286 on which the court gave judgment; but this was reduced to $243 on a motion for new trial by defendant when plaintiff admitted overlooking a provision that total disability was compensable only if it began within two weeks after the injury. With this reduction of the judgment the motion for new trial was denied.

Appellant had moved for a directed verdict for lack of evidence that the injury caused the disability and assigns as error, inter alia, the denial of this motion.

The policy insured the respondent against "the results of bodily injuries sustained while this policy is in force and caused directly and independently of all other causes by violent and accidental means * * *." And it specifically excluded recovery for the following:

"accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly by disease or bodily or mental infirmity or medical or surgical treatment therefor, nor shall it cover injury, disability, death or any other result caused wholly or partly directly or indirectly by * * * disease germs or any kind of infection whether introduced or contracted accidentally or otherwise (excepting only septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means.)"

Appellant contends that respondent had a diseased appendix at the time of the accident and that this contributed to the disability and should bar recovery. In pursuance of this theory the court instructed the jury as follows:

"If you believe from all the evidence in the case that plaintiff's appendix was in a diseased condition and that the accident which occurred on October 27th lighted up or aggravated the diseased condition or infirmity causing the same to become active or acute he cannot recover for any disability resulting therefrom and your verdict must be for the defendant."

In finding for the respondent in the face of this instruction the jury must have determined either that the appendix was not in a diseased condition at the time of the accident or that, despite the diseased appendix, the accident did not

operate on that condition to light up or aggravate it but caused the disability independently of the diseased condition. There is no evidence to support this second possible explanation of the verdict, so it must therefore be supported on the first hypothesis, if at all.

Plaintiff-respondent was an osteopathic physician and surgeon, licensed to practice in the State of Utah. His training included a study of all the courses and subjects taught to an M. D. in medical school. He testified to a knowledge of the symptoms of appendicitis and that prior to October 27, 1935, he had had none of those symptoms, Dr. Albaugh, who recommended and performed the abdominal operation, testified that a fall such as the respondent had could produce, in whole or in part, the appendicitis and consequent disability. To the same effect was the testimony of Dr. Kerby, an X-ray specialist but also formerly a physician and surgeon.

Dr. A. C. Callister testified for appellant that in his opinion the respondent has been suffering from appendicitis for some time before November 17, 1935, and that his appendix was diseased at the time of the accident; that in his opinion, based on his experience, such a fall as the respondent had could not produce the appendicitis from which he suffered without producing other injuries not present in this case.

Appellant urges that the evidence was insufficient to go to the jury because nowhere did any medical expert testify that the accident and injury caused the appendicitis. The question asked Dr. Albaugh was whether or not the condition found at the time of the operation "could have been caused in the whole or in part by the injury sustained when plaintiff came in contact with the handle of the lawn mower." He answered: "I thought it might. I treated the case as an injury up to the time of the operation."

It should be noted here that respondent's counsel did ask Dr. Albaugh if appendicitis was caused by the accident and injury, but objection was made that the question called for a "conclusion that only the jury may find." The court sus-

tained the objection. Whether this was error is not before us. Appellant contends that Dr. Albaugh did not testify that the accident was the cause of the appendicitis. The testimony of Dr. Albaugh was to the effect that the accident could have caused the appendicitis. There is also other testimony and evidence that the accident caused the appendicitis. The plaintiff so testified, and the testimony of Dr. Kerby supports plaintiff's case. There was a direct conflict in the evidence as to the cause of the disability, and there was substantial evidence from which the jury could find that respondent's appendix was not diseased at the time of the accident and that the disability was the direct result of the accident.

Neither *Browning* v. *Equitable Life Assur. Soc.*, 94 Utah 532, 72 P. 2d 1060, (on rehearing) 94 Utah 570, 80 P. 2d 348, nor *Lee* v. *New York Life Ins. Co.*, 95 Utah 445, 82 P. 2d 178, is analogous. In the Browning Case a condition existed in the system of the injured man which the sprain permitted to develop and become virulent in the weakened tissue produced by the sprain; and in the Lee Case there was without doubt a pre-existent gall bladder infection, but the jury must have found it had become latent and that the blow ruptured the infected gall bladder which in turn made necessary the operation which resulted in death and hence was the cause of death. In the case at bar it was permissible for the jury to find that respondent's appendix was not diseased or infected prior to the blow and that the blow to the abdomen was the sole cause of appendicitis and disability, without any question of pre-existent condition or concurrent, contributing or indirect cause.

Appellant assigns as error the refusal to admit into evidence certain portions of the hospital record of the case which might have had an important bearing on the case and which refusal constituted prejudice if it be found erroneous. On the cross-examination of plaintifff's witness, Dr. Albaugh, it was sought to introduce the entire hospital record, the top sheet of which bore Dr. Albaugh's signature while

some other sheets were partially in his handwriting or carried his initials. The court ruled that it would receive in evidence only those portions of the record which were in the witness' handwriting or which were signed and thereby verified by him. This ruling was withdrawn and later, as part of defendant's case, the offer was renewed of the whole record. The court sustained the objection to the whole exhibit, whereupon counsel for defendant offered the separate pages and the court admitted only those written by or authenticated by Dr. Albaugh. The question of what could be admitted as a part of cross-examination or how the record could be used for that purpose is therefore not before us.

The hospital record consisted of several sheets attached together. On some of the sheets the witness had made notations, or had initialed or signed certain portions. He did not know whether the sheets comprising the record when offered were the ones included when he signed the top sheet, or not. He did not know who wrote the sheets or who had had custody of them. Some of them he had not read, some he probably had never seen before, and he had not intended his signature on the top sheet to authenticate the entire record.

We recognize that the practice at common law in requiring the presence in court of the writer, or the identification of his handwriting, of each piece of writing, figure or notation introduced in evidence was too strict. The shop-book rule, permitting the introduction of books of original entry made in the usual course of business and introduced from proper custody and upon general authentication, was a wise liberalization. This court has recognized the shop-book rule. *Welsh, Driscoll & Buck* v. *Buck*, 64 Utah 579, 585, 232 P. 911; *Utah Commercial & Savings Bank* v. *Fox*, 44 Utah 323, 140 P. 660; *Walker Bros.* v. *Skliris*, 34 Utah 353, 361, 98 P. 114; *Ogden Packing & Provision Co.* v. *Tooele Meat & Storage Co.*, 41 Utah 92, 124 P. 333. But here the appellant is contending, not for application of the shopbook rule, but for a rule which permits the

introduction in evidence of a hospital record by a witness who has not read it, has probably not seen parts of it and who has verified but a small portion, without any showing that the record was taken from the hospital's custody and that the method of compilation and preservation is such as to guarantee trustworthiness. Wigmore on Evidence, 2nd Ed., Sec. 1707, approves the introduction of hospital records by their custodian and refers to several states which have enacted statutes authorizing use of such records in evidence, but observes that, "No court seems yet to have sanctioned such an exception on common law principles." States with such statutes are: Colorado (St. 1923, c. 203, Sec. 3) ; Louisianna (St. 1932, No. 170) ; Maryland (St. 1927, c. 673) ; Massachusetts (St. 1927, c. 309) ; Minnesota (Gen. St. 1923, Sec. 4314) ; Missouri (Rev. St. 1929, Sec. 3311, Mo. St. Ann. § 3311, p. 8246) ; New York (Mental Deficiency Law, Consol. Laws, c. 71, Sec. 35, Laws 1919, c. 633; Insanity Law, Sec. 93, now Mental Hygiene Law, Consol. Laws, c. 27, § 204) ; Pennsylvania (Purdon Stats. tit. 77, Sec. 834) ; and perhaps others enacted more recently.

The National Conference of Commissioners on Uniform State Laws has adopted a "Uniform Composit Reports as Evidence Act," and also a "Uniform Business Records as Evidence Act." One or both of these acts would cover hospital records. Neither Act has been adopted in this State. Handbook of the National Conference of Commissioners on Uniform State Laws 1936, pp. 350-353. See Wigmore, 1934 Supplement to Second Edition, Sec. 1707. See also the note in 47 Harvard Law Review, 1044.

This seems an appropriate subject for legislative consideration, but in the silence of our legislature common law principles must be applied. Appellant relies on three cases to urge the error of the district court in refusing all but the verified portions of the record. *Adler* v. *New York Life Ins. Co.*, 8 Cir., 33 F. 2d 827; *Wilson* v. *Deschner*, 167 A. 670, 11 N. J. Misc. 609; *Sykes* v. *Village of Portland*, 177 Mich. 290, 143 N. W. 326. In the Wilson

and Sykes Cases real evidence was introduced—a nail from a bread roll and a portion of the electric wire which electrocuted Sykes' son—and each witness who had handled either was produced so that there was no hearsay admitted in either case. On the authority of these cases appellant can make no argument whatever in this case. In the Adler Case two documents were introduced: a memorandum covering diagnosis of the applicant for insurance, and a record from the Mayo Clinic. As to the first, the doctor who made the diagnosis was deceased. His partner testified that it was the doctor's custom to dictate such memoranda to his stenographer as soon as the patient left and while it was still fresh in his mind and that it was "the practice of our firm to keep a record of our cases." [Page 831.] The stenographer who took the dictation and wrote the memorandum which was introduced in evidence testified to the practice of her deceased employer and that she remembered taking down the particular diagnosis. Here, then, were established custody of the document, regular practice of making such, and the making of the particular document. The only witness who could add to that testimony and remove it from the realm of hearsay was deceased and therefore unavailable. In the case at bar appellant has proved neither custody, the making of the record (except portions of it) nor the necessity of receiving hearsay due to unavailability of those who made the record. The record from the Mayo Clinic in the Adler Case was identified by the physician who made the examination. As the court there observed: "No record could be more surely identified." The Adler Case, far from aiding appellant, shows what appellant should have done to make the record in this case admissible.

An annotation in 75 A. L. R. 378, referred to in Jones on Evidence, Civil Cases, 4th Ed., p. 983, deals with "Admissibility of hospital chart or other hospital record" and finds:

"There is apparently some conflict among the courts as to whether such evidence is admissible at all; there is even more confusion as to

the reason. It is obvious that such evidence can only be admitted under some exception to the hearsay rule, and that the proper foundation must be laid for bringing the case within the particular exception."

None of the cases there cited as supporting admissibility of hospital records go so far as appellant would have us go in this case. Before such records can be admitted, in the absence of a statute, the offering party must show the necessity of admitting the records without ■ requiring the person or several persons who made the records to testify. He must then show the custody from which the records were taken and that they were prepared in the due course of hospital work.

Appellant assigns as additional error the rejection of one page of the hospital record which purported to be the report of the histological analysis of the appendix removed from the respondent and which the pathologist who made the report sought to authenticate. Respondent objected that there was not sufficient evidence that the appendix examined was Clayton's and the court excluded the report pending further evidence of identity of the appendix. Appellant refused to furnish anything in addition to the witness' statement that he received the tissue from a nurse and that it was wrapped in gauze and labeled with the name of the respondent; he testified that this was regular hospital routine and that all tissue removed in the operating room was thus examined and the result made a part of the hospital records.

The district court thought the necessary identification should be made by the person who took the appendix from the surgeon and delivered it to the pathologist. Appellant declined to offer any further testimony to identify the appendix. This assignment is largely covered by ■ what has already been said. Appellant offered no explanation of why the nurse who took the appendix from the surgeon, wrapped and labeled it, and delivered it to the pathologist was not called as a witness. Such a foundation based on necessity should have been laid before the hearsay

was admissible. In refusing to receive this sheet of the hospital record without further evidence of identification or unavailability of witnesses the district court committed no error.

Appellant next urges that the court committed error in refusing to instruct the jury that plaintiff was not entitled to any weekly benefits under the policy for total disability. This was urged on Appellant's motion for new trial and respondent in his brief states that this was the first time appellant had called this to the attention of the court and counsel for respondent. Counsel for respondent then, as he states, suggested a reduction of the verdict by the difference between total disability benefits and partial disability benefits for the period from the date of the operation, December 9, 1935, to January 3, 1936 (the period for which the jury had allowed total disability benefits). The order of the court denying the motion for new trial was made "upon the acceptance by the plaintiff of a reduction of the judgment from $286.00 to $243.00". The jury had allowed $86.00 for total disability benefits. Partial disability benefits for the same period would be $43.00 less than the amount allowed. It was in this amount that the court below reduced the judgment and appellant does not deny that that was the reason for the reduction. We therefore hold that appellant has not been prejudiced by the refusal of the trial court to charge the jury that plaintiff was not entitled to total disability benefits.

Finding no error which has prejudiced appellant we affirm the judgment of the district court. Costs to the respondent.

MOFFAT, WOLFE, and LARSON, JJ., concur.