318 P.2d 330

Charles JOSEPH, for himself and as Guardian ad litem for his children, Tamara Lee and Melanie, Plaintiff and Appellant,

v.

W. H. GROVES LATTER DAY SAINTS HOSPITAL, a corporation, and Dr. J. H. Carlquist, Defendants and Respondents.

No. 8557.

Supreme Court of Utah.

Nov. 26, 1957.

1. 131 A.L.R. 1105–1107.

2. Cohen & Powell, Inc., v. Great American Indemnity Co., 127 Conn. 257, 16 A.2d 354, 131 A.L.R. 1102.

George H. Searle, Elias Hansen, Salt Lake City, for appellants.

Ray Quinney & Nebeker, Albert R. Bowen, Salt Lake City, for respondents.

CROCKETT, Justice.

Ten days following an operation for the removal of a tumor, Mrs. Lucille Joseph died in the L. D. S. Hospital of a "lower nephron nephrosis" (inflammation of the kidneys). Plaintiff, her husband, brought this action for himself and children, alleging that the hospital had negligently ad-ministered a transfusion of incompatible blood which brought on the kidney infection, proximately causing her death.

The two basic issues contested by the parties were: (1) Did Mrs. Joseph receive an incompatible blood transfusion from which she died; and (2) if so, was the defendant hospital negligent in connection with administering it, or in failing to stop it after an unfavorable reaction was noticed. The case was submitted to the jury which returned a verdict of no cause of action. Plaintiff appeals, charging error in certain rulings of the trial court relating to evidence and instructions.

The controversy over the rulings on evidence devolves upon the sustaining of defendant's objection to permitting plaintiff's counsel to read and use in his argument to the jury certain entries upon the hospital record made by two doctors, V. L. Rees and Kenneth A. Crockett, who had been called in to consult with respect to the treatment of Mrs. Joseph. The notations which counsel indicated a desire to read are as follows:

"Pelvic Laparoling 4–453 followed almost immediately by a chill and dark urine. * * * This pt is going into some type of renal decompensation possible on the basis of a transfusion reaction * * *." Signed "V. L. Rees."

And at the bottom of the same page of the Progress Notes:

"This is undoubtedly a Lower Nephrone Syndrome from hemolitic Blood transfusion * * *." Signed "KAC"

The above entries have a direct bearing on a critical and disputed issue: whether Mrs. Joseph received a transfusion of incompatible blood which caused her death.

During the trial, Dr. Val Sundwall, who had performed the initial operation on April 4, testified that in his opinion the patient probably died as a result of a blood transfusion reaction. However, Dr. John H. Carlquist, the pathologist and director of laboratories at the hospital, who was called in on the case and made tests of the patient after difficulties had developed, and who qualified as an expert in the field of blood transfusions and blood typing, being subjected to a searching examination by counsel for plaintiffs, was obviously evasive and persistently refused to concede that there was any definite proof that Mrs. Joseph either received, or died as a result of, a transfusion reaction. This is borne out by the following extracts from his testimony:

"Q. * * * now, that nephrosis was caused, was it not, by this incompatible blood? A. I have never said that.

"Q. But you didn't say it wasn't, did you? A. I said, I have had no proof it was incompatible blood.

"Q. You did say and you do believe now that that might have caused it? A. I have no proof of it.

"Q. That is the most probable cause of it, isn't it. A. I have never been able to prove it.

* * * * * *

"Q. If this had been properly typed, this haematolysis would not have occurred, would it? A. I have never seen any evidence of haematolysis in this case.

* * * * * *

"Q. But you doubt very much if she had haematolysis, is that right? A. Yes, sir; I was never able to prove there was any haematolysis took place.

* * * * * *

"Q. Now, it is your testimony, to make it clear, that this patient didn't have haematolysis? A. No, sir, I was never able to prove there was any haematolysis.

"Q. But was that not the most likely injury to her kidney—most obvious? A. It was one that had to be considered, * * *."

The above are but representative excerpts from several pages of similar testimony of Dr. Carlquist. The fact that he repeatedly refused to admit that there was any evidence from which a conclusion could

be drawn that the patient had had an incompatible blood transfusion or that her death resulted from one, shows plainly that the entries in the record did not represent merely a recapitulation of other testimony brought out at the trial, but could reasonably be interpreted as opposed to his testimony. It was therefore evidence of extreme importance to the plaintiff's theory as to the cause of death. That issue was submitted to the jury by the court in Instruction No. 13. They were told that if they believed that "the death of Mrs. Joseph was from a cause other than the administration of incompatible blood * * *" then they must return a verdict of "no cause of action."

 Defendant urges that inasmuch as the doctors who made the notations were not employees of the hospital, such entries were neither admissible nor binding upon it. We are aware of rulings from other jurisdictions that exclude such record evidence where opinions are reflected.[1] But we adhere to the view which admits evidence of the character here in question notwithstanding the fact that it represents in part doctors' opinions as to the patient's condition.[2] The notations were recorded as information deemed pertinent to the care and treatment by persons performing duties

in that regard. We have heretofore recognized that the entering of data on hospital records by personnel so engaged carries sufficient guarantees of trustworthiness to render them admissible in evidence and worthy of consideration by the fact finder in connecting with the other evidence in the case.[3] The doctors attending Mrs. Joseph come within such classification and the entries they made upon the hospital record in connection with their duties in rendering medical service to this patient are competent evidence to be considered for such purpose. It is suggested that plaintiff could have called the doctors as witnesses. But why should he do so if he was satisfied with the records. The defendant, likewise, could have called the doctors had it so desired. Anent defendant's contention in regard to matter which might obviously be inadmissible, e.g. entries which might be made by unauthorized persons having no connection with it, we remark aside that if some meddler, having no duty nor legitimate business doing so, made entries upon the hospital record, that would be subject to explanation by the hospital, facts not present here.

 The defendant further argues that, assuming the notations are competent evidence, it was nevertheless but harmless error for the trial court to sustain his ob-

1. See e. g. New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297.
2. In re Richards' Estate, 5 Utah 2d 106, 297 P.2d 542; Allen v. St. Louis Public,

365 Mo. 677, 285 S.W.2d 663; People v. Gorgol, 122 Cal.App.2d 281, 265 P.2d 69.
3. In re Richard's Estate, 5 Utah 2d 106, 297 P.2d 542.

jection to their being read and argued to the jury because the records had actually been received in evidence and were there for the jury to read if they so desired. It suggests, therefore, that the result could not have been different in the absence of the error. We are aware of and in accord with the mandate not to reverse a case merely because of error, and we will do so only when it appears to be prejudicial to the rights of a party.[4] Neither this statutory mandate, nor the policy we follow thereunder, goes so far as to require that we ignore errors that may have a substantial effect upon the outcome of a trial.[5]

■ It is not always easy to tell when an error should be regarded as prejudicial, as attested by the division of the court in this case. It is necessary to survey all of the facts and circumstances disclosed by the record and if, in so doing, the error appears to be of such a nature that it can be said with assurance that it was of no material consequence in its effect upon the trial because reasonable minds would have arrived at the same result, regardless of such error, it would be harmless and the granting of a new trial would not be warranted. On the other hand, if it appears to be of sufficient moment that there is a reasonable likelihood that in the absence of such error a different result would have eventuated, the error should be regarded as prejudicial and relief should be granted. Measured by such considerations we assay the possible effect of the error complained of, realizing of course that it is now quite impossible to tell definitely whether the verdict would have been different.

■ In regard to the suggestion that the records were in evidence for the jury to read if they so desired, it is pertinent to look at the notations themselves, quoted in the third paragraph of this opinion. It will hardly be denied that they are couched in such terms that they could stand some elaboration for the benefit of those uninitiated in the mysteries of medical terminology. This emphasizes the importance of according plaintiff's counsel the opportunity of performing one of his essential functions: that of arguing his case to the jury. In doing so, he should be permitted to refer to and use all of the competent evidence he has marshalled and presented in the trial, and to explain its meaning and argue its significance to his client's cause.[6]

4. Rule 61, U.R.C.P.; See Startin v. Madsen, 120 Utah 631, 237 P.2d 834, and authorities therein cited.
5. Bowden v. Denver & R. G. W. R. Co., 3 Utah 2d 444, 286 P.2d 240; Startin v. Madsen, 120 Utah 631, 237 P.2d 834; Boyd v. Sam Pedro, L. A. & S. L. R. Co., 45 Utah 449, 146 P. 282.

6. Standard Accident Ins. Co. v. Simpson, 151 Fla. 564, 10 So.2d 85; Givans v. Chicago, St. P., M. & O. Ry. Co., 238 Minn. 161, 56 N.W.2d 306, 38 A.L.R. 2d 1393; Annotation, 38 A.L.R.2d 1396; 53 Am.Jur., Trial, § 453.

Some indication of the importance of the error with which we are here concerned is to be found in the fact that counsel thought the matter of sufficient consequence that he objected to the reading and use of the evidence in the argument to the jury. It strikes the writer as being somewhat inconsistent that counsel now urges that depriving plaintiff of the use of such evidence was merely harmless error. If it is so plain that it would not have helped plaintiff's case, one is led to wonder why counsel made the objection and insisted that it not be used. The obvious answer seems to be that defendant's counsel was actually apprehensive that it may have a substantial effect against his client. Of course, he could not be sure, nor can we.

In view of the fact that there is such substantial doubt that we cannot, with any degree of assurance, affirm that the use of such evidence would not have been helpful to the plaintiff, the doubt should be resolved in favor of allowing him to have a full and fair presentation of his cause to the jury.

A new trial being ordered, it is our duty to "pass upon * * * all questions of law involved in the case presented upon the appeal and necessary to final determination * * *,"[7] accordingly we comment briefly on two other assignments of error.

The first is plaintiff's contention that a nurse who cared for deceased could not express an opinion that she was given good nursing care. The objection was on the ground that this was the very issue to be decided by the jury and the witness thus invaded its province. This objection is untenable. Whether the testimony of an expert is as to "the very issue before the jury" is not a proper test as to its admissibility. Where the subject of inquiry is in a field beyond the knowledge generally possessed by laymen, one properly qualified therein may be permitted to testify to his opinion as an expert. If the opinion evidence is such that it will aid the jury in understanding their problems and lead them to the truth as to disputed issues of fact, it is competent and admissible, irrespective of whether it bears directly upon the ultimate fact the jury is to determine.[8] And the trial judge is allowed a wide discretion in regard to the allowance of such testimony.[9]

Concerning an instruction which purportedly singled out one ground of alleged negligence and thus excluded others:

7. Rule 76(a), U.R.C.P.
8. Baker v. Wycoff, 95 Utah 199, 79 P.2d 77; United States v. Bowman, 10 Cir., 73 F.2d 716; 7 Wigmore, Evidence Sec. 1918 et seq.; McCormick, Evidence p. 25; see Justice Wade's separate opinions in: Employers' Mutual Liability Ins. Co. of Wisconsin v. Allen Oil Co., Utah, 258 P.2d 445; Hooper v. General Motors, Utah, 260 P.2d 549; Jiminez v. O'Brien, 117 Utah 82, 213 P.2d 337.
9. See United States v. Bowman, supra; McCormick, Evidence p. 26; 7 Wigmore Evidence, Secs. 1920, 1921.

upon retrial it may be well for the court to consider rephrasing it; yet if the instructions are considered all together, as they must be, we doubt that it can fairly be said that the instruction had the effect plaintiff suggests.

Remanded for a new trial. Costs to appellants.

WADE and WORTHEN, JJ., concur.

McDONOUGH, Chief Justice (dissenting).

I am unable to concur in the decision of the majority wherein it is held that the trial court committed prejudicial error in refusing counsel permission to argue to the jury the notations in the hospital record purportedly made by Drs. Rees and Crockett. In considering this question, more of the factual background than is revealed by the opinion must, in the judgment of the writer, be considered.

It is first to be observed that the notations referred to are conclusions of the persons making the notations. The record is absolutely devoid of evidence which would reveal the qualifications of such persons other than that they are medical doctors. What their training and experience is, is not shown. Insofar as revealed by the record, the conclusions referred to were drawn without ever seeing the patient. All the record reveals is that when Dr. Sund-

wall, the attending physician, was shown a dark sample of urine which indicated that there was probably blood in the urine, he consulted with Dr. Rees and Dr. Crockett. Whether they had anything else before them other than the other notations on the hospital record does not appear. These facts are important, since it is elementary that for a person to give his opinion as an expert, a foundation for his testimony must be laid by showing his qualifications and the extent of information upon which he bases his conclusions. The absence of such showing is more significant when it is recalled that Dr. Crockett and Dr. Rees were both subpoenaed by the plaintiff, were present in court and were not called upon to testify. The only explanation offered in appellant's brief for not calling the doctors is the following:

"It is reasonable to assume that when Exhibit 2-D was received in evidence, the necessity of calling the doctors whose statements were contained in such exhibit, in great part, disappeared and they were excused."

In the case of In re Richards' Estate, cited in the opinion of the court, there is quoted with approval from the prior case of Clayton v. Metropolitan Life Insurance Co., 96 Utah 331, 85 P.2d 819, 823, 120 A.L.R. 1117, the following:

"Before such records can be admitted, in the absence of statute, the of-

fering party must show the necessity of admitting the records without requiring the person or several persons who made the records to testify."

It cannot be overemphasized that we are not here dealing with notations of fact relative to symptoms, treatment, directions to hospital staff and other factual matters. We are here dealing with the purported opinions of experts.

Counsel were not misled by the stipulation that the hospital records might be received in evidence, into believing that everything that might be contained in the hospital record was competent. During the cross-examination of Dr. Carlquist, when he was confronted with the notations in the record made by Dr. Rees and Dr. Crockett, respondent's counsel objected on the ground that it was not cross-examination and that it was hearsay. He was thereby advised that the contention would be made by counsel that this evidence could not be considered by the jury. Some 70 pages of testimony were thereafter adduced, and there was ample opportunity for counsel to recall Drs. Crockett and Rees and present their evidence to the jury. Whether their conclusions as to the cause of the uremia from which the patient concededly died would be the same at the time of the trial following an autopsy as they were when the notations were made cannot be determined. It is interesting, however, in that connection to note that Dr. Carlquist, the hospital

pathologist, was confronted on cross-examination with statements made by him in his autopsy report. After stating therein the immediate cause of death and the symptoms leading up thereto his report stated: "The obvious answer is an incompatible blood transfusion." After that, the report went on to state that the doctor performed the autopsy and from that autopsy and other tests made he was unable to determine that there was an incompatible blood transfusion. Thus, the hospital pathologist was of the same opinion, based upon the same factual data, as was Dr. Crockett and only changed his opinion upon further information.

Conceding, therefore, in view of the stipulation, that it was error for the court not to permit counsel for the appellant to argue these notations to the jury—a conclusion which, to say the least, is doubtful—the writer is unable to find therein reversible or prejudicial error under the criteria suggested in the opinion of the court as a basis for determining that question. "It is necessary," says the opinion, "to survey all of the facts and circumstances disclosed by the record and if, in so doing, the error appears to be of such a nature that it can be said with assurance that it was of no material consequence in its effect upon the trial because reasonable minds would have arrived at the same result, regardless of such error, it would be harmless and the granting of a new trial would not be warranted." It

is inconceivable to the writer that but for the alleged error the jury in this case would have arrived at a different result. Had counsel for appellants been permitted to argue these matters to the jury, they could give them dictionary definitions of words therein found, some of which the writer has been unable to find in Webster's Unabridged Dictionary, and to emphasize the word, "undoubtedly," in Dr. Crockett's notation. Counsel could not testify as medical experts, nor could they testify as to the qualifications of the doctors who made the notations. Had they been permitted, however, to argue these entries, counsel for the respondents would undoubtedly point out to the jury the matters hereinbefore set forth to meet any such argument made by counsel for the appellants. In evaluating the probability of a different result had counsel been permitted to so argue, an observation in appellant's brief is enlightening. All of the hospital records were permitted by the court to be taken to the jury room. Commenting upon that fact, counsel for the appellants in their brief said, "In this connection it may be noted that the jury could not have examined the contents of Exhibit 2-D . because they reported that they had agreed on a verdict before counsel had time to take their exceptions to the instructions." In view of this, and bearing in mind that the ultimate issue to be decided was the negligence of the defendant hospital, there does not appear to the writer a remote possibility that the verdict would have been different had appellant's counsel been permitted to comment upon the sketchy entries under discussion. Since I agree with the court's disposition of the other errors assigned, I would affirm the judgment below.

HENRIOD, J., concurs in the dissenting opinion of Mr. Chief Justice McDONOUGH.