## JOHANSON v. HUNTSMAN.

No. 3763.   Decided June 9, 1922.   Rehearing denied Sept. 6, 1922.
(209 Pac. 197.)

1. ASSAULT AND BATTERY—EVIDENCE HELD TO SUPPORT VERDICT FOR SUBSTANTIAL DAMAGES. In an action for injuries received in an assault and battery by defendant, evidence *held* to support a verdict for substantial damages.

2. ASSAULT AND BATTERY—EVIDENCE HELD TO SHOW THAT ASSAULT WAS WILLFUL, WANTON, AND MALICIOUS. In an action for injuries sustained from assault and battery by defendant, evidence *held* to show that the assault was not only without justification or excuse, but was also willful, wanton, and malicious.

3. ASSAULT AND BATTERY—EXEMPLARY DAMAGES MAY BE AWARDED, WHERE ASSAULT IS WILLFUL, WANTON, AND MALICIOUS. Where an assault and battery is willful, wanton, and malicious, exemplary damages may be awarded.[1]

4. APPEAL AND ERROR—INSTRUCTION AS TO RIGHT OF MERCHANT TO EJECT PERSON FROM STORE HELD HARMLESS. In an action for injuries sustained in an assault and battery by defendant, an instruction that the operating of a general merchandise store is an implied invitation to the public to enter for all legitimate purposes, and if plaintiff entered the store for a lawful purpose, and committed no unlawful act nor created any disturbance while there, defendant had no right to eject plaintiff by any force whatever, and the use of any force constituted assault, though erroneous, was not prejudicial, in view of evidence showing unreasonable violence on the part of defendant.

5. ASSAULT AND BATTERY—INSTRUCTION THAT MALICE MAY BE INFERRED, WHERE AN ASSAULT IS COMMITTED AND INJURY INFLICTED, HELD NOT ERRONEOUS. In an action for injuries from assault and battery, an instruction that if an assault and battery was committed, and injury inflicted, as alleged, intent to injure and

[1] *Hirabelli* v. *Daniels*, 40 Utah, 513, 121 Pac. 966; *Marble* v. *Jensen*, 53 Utah, 226, 178 Pac. 66.

malice may be inferred, was not erroneous, where the complaint alleged both injury and malice.

6. Assault and Battery—Instruction that Owner of Store had No Right to Use a Dangerous Weapon to Eject Plaintiff, Lawfully Entering Store, Held not Erroneous. In an action for injuries from assault and battery, an instruction that, if plaintiff went into defendant's store for a lawful purpose, and did not commit nor attempt to commit an act of violence, from which defendant had reason to fear any immediate injury to himself or his property, or to any person legally in the store, defendant had no right to use a deadly or dangerous weapon to eject plaintiff, because plaintiff did not leave instantly after being requested to do so, correctly stated the law.

7. Assault and Battery—Instruction that Verdict Should be for Plaintiff, if Defendant Used Force and Violence, Which was Unnecessary, Held not Erroneous. In an action for injuries from assault and battery, an instruction that, before making any effort to remove plaintiff from his store by means such as a reasonably prudent man would have used under such circumstances, defendant struck plaintiff on the head with a heavy piece of wood, and used force and violence which was unnecessary, and for which there was no provocation or excuse, verdict should be for plaintiff, correctly stated the law.

8. Assault and Battery—Instruction on Damages Held not Erroneous. In an action for injuries from assault and battery, an instruction that, if defendant used unlawful, unnecessary, and improper force on plaintiff, and such force was not such force as, under all the circumstances, would be calculated to eject plaintiff from defendant's store, such damages as would be the natural and proximate consequences of the acts may be assessed against defendant, correctly stated the law.

9. Assault and Battery—Instruction Regarding the Pleading of Justification Held not Erroneous. In an action for injuries from assault and battery, an instruction that, if defendant committed an assault on plaintiff in defendant's store after bringing on the affray by the use of irritating and abusive language, defendant cannot plead justification for striking plaintiff with a deadly weapon in defense of possession of his property, correctly stated the law.

10. Assault and Battery—Instruction Regarding Interposing Defense that Plaintiff Refused to Leave Premises after Request Held not Erroneous. In an action for injuries received in an assault and battery by defendant, an instruction that the

defense that defendant requested plaintiff to leave his premises, and that plaintiff refused to leave on such request, cannot be successfully invoked, if defendant himself was in fault, or where he used unnecessary force in ejecting plaintiff, as where he unnecessarily beat or wounded him, or used a dangerous or deadly weapon, correctly stated the law.

11. ASSAULT AND BATTERY—ALLEGATION THAT ASSAULT WAS WITH A DEADLY WEAPON HELD NOT NECESSARY: In an action for injuries received in an assault with a wagon felly by defendant, it was not necessary for plaintiff to allege that the assault was with a deadly weapon.

12. APPEAL AND ERROR—MERE MATTERS OF FORM AND PHRASEOLOGY OF INSTRUCTIONS DISREGARDED. The Supreme Court will disregard mere matters of form and phraseology of instructions, unless they are calculated to mislead the jury to the prejudice of the complaining party.

13. ASSAULT AND BATTERY—INSTRUCTION THAT DEFENDANT MAY HAVE BEEN JUSTIFIED IN RESORTING TO THE MEANS HE USED HELD PROPERLY REFUSED. In an action for injuries received in an assault and battery by defendant, an instruction that defendant may have been justified in resorting to the means used in attempting to eject plaintiff from defendant's store was properly refused, in view of the evidence.

14. EVIDENCE—HYPOTHETICAL QUESTION HELD NOT OBJECTIONABLE, BECAUSE NOT CONTAINING ALL THE EVIDENCE. A hypothetical question, asked by plaintiff of an expert produced by him, was not objectionable, because it did not contain all the evidence, where all the facts contained were in evidence, and especially so where the opposing party asked the witness a question on cross-examination covering every fact which he insisted should have been included in the question objected to.[2]

Appeal from District Court, Fifth District, Millard County; *Joseph H. Erickson,* Judge.

Action by Edward G. Johanson against G. R. Huntsman. From a judgment for plaintiff, and an order denying a new trial, defendant appeals.

[2] *Palmquist* v. *Mine & Smelter Supply Co.,* 25 Utah, 263, 70 Pac. 996; *Live Stock Co.* v. *Live Stock Co.,* 43 Utah, 559, 137 Pac. 839.

AFFIRMED.

J. A. Melville, Jr., of Salt Lake City, and T. M. Ivory, of Fillmore, for appellant.

W. G. Higgins, of Fillmore, and J. H. McKnight, of Nephi, for respondent.

THURMAN, J.

This is an action to recover damages for an alleged assault and battery. The complaint in substance alleges that on the 15th day of July, 1920, in Millard county, Utah, the defendant did unlawfully, wrongfully, willfully, and maliciously commit an assault and battery against and upon the person of plaintiff, and did then and there brutally beat and batter the plaintiff by means of his fist and a heavy stick of wood, until plaintiff was rendered unconscious; that plaintiff has thereby suffered serious, painful, and permanent injuries, to his damage in the sum of $20,000.

Defendant by his answer denies the allegations of the complaint, and affirmatively alleges that at the time of the alleged grievances charged in the complaint, and prior thereto, plaintiff was engaged in transporting freight and express from Oasis and Delta to Fillmore, Utah, and had at various times hauled freight and express for defendant; that the service so rendered by plaintiff for defendant was not satisfactory, and that in June, 1920, defendant personally notified and instructed plaintiff not to haul any more freight or express belonging to defendant, or accept the same from the railroad company; that, notwithstanding such notice and instructions, plaintiff on the 15th day of July, 1920, attempted to deliver to defendant, at his place of business in Fillmore, a C. O. D. express package, and demanded payment of the charges due thereon; that defendant refused to accept the package, and thereupon plaintiff became angry and ill-tempered, and used offensive, vile, and opprobrious language toward defendant, and created a disturbance in defendant's place of business;

that defendant thereupon requested plaintiff to leave his said place of business, which plaintiff refused to do, whereupon the defendant then and there removed the plaintiff therefrom, and in doing so used no unnecessary violence; that said acts of defendant are the matters complained of in plaintiff's complaint.

The jury to whom the case was tried found for the plaintiff and awarded him damages in the sum of $2,000. Defendant moved for a new trial. The motion was denied, and from the judgment entered defendant appeals. The errors assigned relate to evidence admitted over defendant's objections, the giving of certain instructions to the jury, the refusal to instruct as requested by defendant, and the overruling of defendant's motion for a new trial.

There is substantial evidence in the record to sustain the following facts: That at the time of the alleged assault, and for some time previous thereto, plaintiff was engaged in transporting freight and express matter from Oasis and Delta to Fillmore, and during the same period of time defendant was carrying on business as a merchant at the last-mentioned place; that in June, previous to the alleged assault, defendant became dissatisfied with plaintiff, for some reason not explained in the record, and requested plaintiff to not haul any more freight or express matter belonging to defendant; that on the 15th day of July, 1920, plaintiff entered defendant's store at Fillmore and attempted to deliver an express package C. O. D., addressed to defendant, and informed defendant that there was due thereon the sum of 78 cents, which he had advanced to the agent, and 22 cents for his own services, aggregating the sum of $1, which amount the plaintiff then and there requested defendant to pay; that defendant refused to pay the amount demanded, and told the plaintiff to take the package away; that it was nothing but advertisements, and to plaintiff to get out of the store. To this plaintiff replied, "I am pleased to go as soon as I get my dollar." At this point, according to the testimony introduced in behalf of the plaintiff, defendant took from the counter a wagon felly, consisting of a piece of wood weighing about 6 pounds,

and struck plaintiff on the left side of the head, from the effects of which plaintiff would have fallen to the floor, if he had not supported himself by holding to the counter. The counter was a little over 3 feet wide. Defendant was behind the counter, and plaintiff was on the opposite side. A gash described as about one inch long was cut in plaintiff's scalp, from which the blood flowed with considerable profusion. After the blow was struck, defendant started around the counter towards plaintiff. He was intercepted by his son and another person. Plaintiff then left the store, and called upon a physician, who dressed the wound, after which he went to his home, several blocks distant.

There is more or less evidence as to what was said by plaintiff and defendant just before the assault occurred, each of the parties charging that the other used profane and opprobrious language; but as to these charges there is a sharp conflict in the testimony, and for that reason we have not deemed it necessary to state the evidence in detail. As to the extent and permanency of plaintiff's injury, plaintiff testified, in substance, that since the injury he has been subject to spells of dizziness and headache; that it makes him dizzy to stoop over; that he does not sleep well; that he has not felt as strong as he did before; that he has not been as able to do hard work. Plaintiff was 58 years old at the time of the trial in August, 1921.

It certainly cannot seriously be contended that the evidence is insufficient to support a verdict for substantial damages. To this should be added the further fact that the evidence tended to show that the defendant displayed some ill will toward the plaintiff, and probably would have inflicted further injuries upon him, if he had not been prevented by parties present when the assault was made. The jury were justified, under the evidence, in arriving at the conclusion that the assault and battery was not only without **1-3** just provocation or excuse, but that it was also willful, wanton, and malicious. In such case the rule in this jurisdiction is that exemplary damages may be awarded. *Hirabelli*

v. *Daniels*, 40 Utah, 513, 121 Pac. 966; *Marble* v. *Jensen*, 53 Utah, 226, 178 Pac. 66.

Appellant assigns as error numerous instructions given to the jury. For convenient reference these instructions as numbered will be quoted in full. Their effect will be considered in the order adopted by appellant:

"No. 5. You are further instructed as a matter of law that if you believe from the evidence in this case that, on the date alleged in the plaintiff's complaint, the defendant maliciously assaulted the plaintiff, and that said assault was unlawful, unnecessary, and malicious, you may assess such damages as the plaintiff actually suffered, and in addition thereto you may assess a reasonable amount against the defendant as exemplary damages, which may act both as punishment for his wrongful act and as a warning to others not to commit an unlawful assault.

"No. 6. You are further instructed that, if you believe from the evidence in this case that at the time of the alleged assault the plaintiff was in the store of the defendant upon a lawful and peaceful errand, and had committed no act of violence against the defendant or his property, nor attempted to, from which defendant feared or had reason to fear any immediate injury to either himself or property, or to any other person legally in said store, and if you further believe from all the evidence that the defendant requested the plaintiff to leave said store, and that plaintiff did not instantly leave or depart from said store, yet the defendant would not be entitled to use a deadly or dangerous weapon upon the plaintiff in attempting to eject him from his store.

"No. 7. The defendant has admitted in this case that the plaintiff came into his store upon the date defendant is alleged to have assaulted the plaintiff, and that thereupon defendant ordered plaintiff to leave his store; that the plaintiff refused to comply with such request, whereupon defendant, with only such force as was necessary for such purpose, ejected the plaintiff from said store; and I charge you that if you believe from the evidence in this case that, before making any effort to remove the plaintiff from his store by reasonable and fair means such as a reasonably prudent man would have done under such circumstances, the defendant struck the plaintiff on the head with some heavy piece of wood, and in such act used force and violence upon the plaintiff which was unreasonable and unnecessary, and for which there was no provocation or excuse, then and in that event you should find for the plaintiff.

"No. 8. You are further instructed that, if you find for the plaintiff, that is, if you find that, upon the date alleged in the complaint, the defendant used unlawful, unnecessary, and improper force upon the plaintiff, and that such force was not such force as under all the

circumstances would be calculated to eject the plaintiff from the store of the defendant, you may assess against the defendant such damages as would be the natural and proximate consequences of such act.

"No. 9.   You are further instructed that Huntsman cannot plead justification for striking Johanson with a deadly weapon in defense of possession of his property, if you believe from the evidence that Huntsman committed an assault upon Johanson in Huntsman's store, after bringing on the affray by the use of irritating and abusive language.

"No. 10.   You are further instructed that the defense that defendant requested plaintiff to leave his premises, and that plaintiff refused to leave upon such request, cannot be successfully invoked, if the defendant himself was in fault, or where he uses unnecessary force in ejecting the intruder, as where he unnecessarily beats or wounds him, or uses a dangerous or deadly weapon.

"No. 11.   It appears in this case that defendant was, at the time the alleged assault occurred, keeping and operating a general merchandise store; that as such storekeeper he impliedly invited the public to enter his store or place of business for all legitimate purposes pertaining or relating to such business; and you are instructed as a matter of law that, if you find from the evidence that plaintiff entered the store of the defendant at the time alleged for a legitimate purpose, and did not while there commit any unlawful act or create any disturbance, then, in that event, the defendant had no right to order plaintiff from his store, nor to use any force whatever to eject him therefrom, and the use of any force by the defendant upon the plaintiff would constitute an assault.

"No. 12.   The court further instructs you that in this case, if you believe that assault and battery was committed, and an injury inflicted, as alleged, in that event, the intent to injure and malice is presumed, and you may so find.

"No. 13.   You are further instructed that a dangerous or deadly weapon is one likely to produce death or great bodily harm by the use made of it.   But a weapon capable of producing death is not necessarily a weapon likely to produce death.   A wagon felly is a deadly weapon.

"No. 14.   You are further instructed that, if you believe from the evidence in this case that at the time of the alleged assault plaintiff was in defendant's place of business upon a lawful and peaceful errand, and that he created no disturbance while there, and that while there the defendant wantonly and wrongfully, without making any other attempt to eject the plaintiff from said store, struck the plaintiff upon the head with a wagon felly such as was exhibited by plaintiff in this case, from which striking plaintiff has suffered substantial and permanent injury, such as physical pain,

distress of body or min'd, or permanent injury or disfigurement, then and in that event the plaintiff is entitled to recover damages for all injuries which are the natural and proximate consequence of, or can be traced to, the injury complained of."

Appellant's first objection is to instruction No. 11. The point is made that the proprietor of a store or other place of business has the right to eject an individual therefrom when he is requested to leave, notwithstanding the implied invitation to the public to enter such place. Many authorities are cited and quoted from at length in support of appellant's contention. 2 R. C. L. 559, § 37, and cases cited; 2 R. C. L. 557, § 36; *Woodman* v. *Howell,* 45 Ill. 367, 92 Am. Dec. 221; *People* v. *Root,* 170 Ill. App. 608; *McDermott* v. *Kennedy,* 1 Har. (Del.) 143; *Norris* v. *Whyte,* 158 Mo. 20, 57 S. W. 1037; *State* v. *Reed,* 154 Mo. 122, 55 S. W. 278; *Crouch* v. *Ringer,* 110 Wash. 612, 188 Pac. 782, 9 A. L. R. 374; *Raefeldt* v. *Koenig,* 152 Wis. 459, 140 N. W. 56, L. R. A. 1918E, 1052. Appellant's quotation from 2 R. C. L. p. 559, fairly states the doctrine of these cases, and no doubt is a correct statement of the law as applied to the facts in the cases referred to:

"It is a well-settled principle that the occupant of any house, store, or other building has the legal right to control it, and to admit whom he pleases to enter and remain there, and that he also has the right to expel from the room or building any one who abuses the privilege which has been thus given him. Therefore, while the entry by one person on the premises of another may be lawful, by reason of express or implied invitation to enter, his failure to depart, on the request of the owner, will make him a trespasser, and justify the owner in using reasonable force to eject him."

If, in the instant case, defendant had done nothing more, after requesting plaintiff to leave the store, than to use such reasonable force as was necessary to eject him from the premises, such as taking hold of plaintiff and pulling or pushing him toward the point of exit without unnecessary violence, and under such circumstances the trial court had instructed the jury as it did in instruction No. 11, and the jury had found against the defendant, we would unhesitatingly hold that the instruction was not only erroneous, but clearly prej-

udicial. We think, as an abstract proposition of law, the instruction complained of was wrong, but not prejudicial in the instant case. Under any theory deducible from the evidence disclosed by the record we are of opinion that defendant used more force and greater violence than was necessary to eject plaintiff from the premises. Indeed, it does not satisfactorily appear that the kind of force used by defendant was calculated to eject plaintiff from the premises, but rather to disable him so that he could not depart. In these circumstances the court might well have instructed the jury, as matter of law, that the act of defendant amounted to an assault and battery, leaving to the jury merely the question of damages. None of the authorities cited by appellant justifies the violent use of a dangerous weapon, such as was used by defendant in the case at bar, merely to eject a person from his premises, though such person be a trespasser at the time of the assault. We are therefore of the opinion that, notwithstanding instruction No. 11 may have been erroneous, it was not in any sense prejudicial.

Appellant's next objection is to instruction No. 12. The point of the objection is that malice should not be inferred from the mere fact that an assault and battery was committed and an injury inflicted. Such contention we believe is correct, and if such was the purport and meaning of the instruction complained of it would undoubtedly constitute reversible error. But such is not its purport and meaning. While the instruction is somewhat involved, and not in artistic form, there can be no mistake as to its meaning. It simply means that, if the jury find an assault and battery was committed and injury inflicted, as alleged in the complaint, then the intent to injure and malice is presumed. Inasmuch as the complaint alleges both injury and malice, we do not understand why intent to injure and malice should not be presumed, where the evidence shows that the assault was committed and the injury inflicted as alleged. The instruction, read in connection with the complaint, which is also included in the court's instruction, could not possibly have misled the jury, to the defendant's prejudice.

412   SUPREME COURT OF UTAH   [Sept.

Johanson v. Huntsman, 60 Utah 402

Next in the order of appellant's assignment is his objection to instruction No. 5. Appellant complains of the instruction because it authorized the jury, under the conditions .mentioned, to find a verdict for exemplary damages. We have already held that in this jurisdiction, in this class of cases, exemplary damages may be awarded when the acts complained of are willful, wanton, or malicious. *Hirabelli* v. *Daniels*, and *Marble* v. *Jensen*, supra.

Instruction No. 6, in the opinion of the court, is a correct statement of the law. *Newcome* v. *Russell*, 133 Ky. 29 117 S. W. 305, 22 L. R. A. (N. S.) 724, and cases cited 6 in the note.

The same may be said as to instructions No. 7, No. 8, 7-10 No. 9, and No. 10.

Objection is made to instruction No. 13, because the court told the jury that a wagon felly was a deadly weapon, and that thereby the court infringed upon the province of the jury. We do not deem it necessary in this case to determine whether or not as matter of law the wagon felly used by defendant was a deadly weapon. This is not a case in which the right of plaintiff to recover depends upon whether or not the instrument used was a deadly weapon. If his right to recover depended upon that fact, the writer would have grave doubts as to the validity of the instruction. In this case, however, the right of plaintiff to recover depends entirely upon the fact that he was wrongfully assaulted and injured, without regard to the nature of the weapon used. It is not alleged in his complaint that he was assaulted with a deadly weapon, nor was it necessary to make such allegation.

In *Crow* v. *State*, 55 Tex. Cr. R. 200, 116 S. W. 52, 21 L. R. A. (N. S.) 497, there is an elaborate note as to what constitutes a deadly weapon, and whether or not it is 11 a question for the court or the jury. We do not consider the question of sufficient importance in the present case to justify an extended review of the cases. The wagon felly was introduced as an exhibit in the case, and was seen and probably handled by the jury. It is inconceivable to us that the court denominating it a "deadly weapon" could have

had any prejudicial effect. It neither added to nor diminished the injury actually inflicted.

Instruction No. 13, like nearly every other instruction reviewed, is not happily worded. It is open to hypercritical objection, the same as those we have already considered, and appellant's able counsel has made the most of his opportunity. We are compelled, however, in every case to disregard mere matters of form and phraseology, unless they are calculated to mislead the jury to the prejudice of the party complaining. While many of the instructions are not such as we would recommend, principally because they savor too much of instructions given by request, flavored with the bias of the party making the request, yet the court is of opinion that none of them were prejudicial to the substantial rights of appellant.

Appellant also assigns as error the refusal of the court to instruct the jury as requested in defendant's requests No. 1, No. 2, and No. 4. The requested instructions were properly refused, for the reason that they were based upon the theory that the defendant may have been justified in resorting to the means used, and in going to the extent that he did in his alleged attempt to eject the plaintiff from the premises in question. We feel compelled to hold as matter of law, under the undisputed facts, that defendant was not justified in using the means and force he did use at the time of making the assault.

Finally, it is contended by appellant that the court erred in admitting, over appellant's objections, answers to certain hypothetical questions propounded to plaintiff's expert witness, Dr. Clark. The principal objection is that the question did not contain all the evidence in the case, or at least certain matters relating to previous alleged injuries received by plaintiff years before, and certain habits, such as using tobacco and drinking coffee, to which the plaintiff had been addicted. In answer to this objection it is perhaps sufficient to say that plaintiff's hypothetical question fairly presented such facts as he deemed necessary to establish his theory of the case. In *Palmquist* v. *Mine &*

*Smelter Supply Co.*, 25 Utah, ·257, at page 263, 70 Pac. 994, at page 996, the court says:

"Hypothetical questions to an expert witness may be framed, either upon all the facts in the case or upon any part of the facts assumed to be true which is sufficient in itself"—citing many cases.

This excerpt is quoted with approval in *Live Stock Co.* v. *Live Stock Co.*, 43 Utah, at page 559, 137 Pac. at page 839, supplemented by the following language of the court:

"That is, the party producing the expert and propounding the question may do so upon his own theory ·of the case, and so long as he sufficiently reflects the evidence which goes to establish his theory, the question is not objectionable upon the ground that all the evidence in the case is not reflected in the question. See cases cited in the Palmquist Case, supra."

There is, however, another reason why in the opinion of the court the question was not obnoxious to the objection made. After the hypothetical question was answered by the witness, appellant's counsel, on cross-examination, propounded to the witness a question covering substantially every fact which appellant insisted should have been included in the question to which the objection was made. The witness thereby had the opportunity to express his opinion, and did express it, in the light of every fact and condition which appellant insisted should have been included in plaintiff's question. What was omitted in plaintiff's question was fully covered by the cross-examination; hence there is no merit in appellant's exception under this assignment.

Whatever may be the opinion of the court as to whether or not the damages awarded by the jury are excessive, we have no power to reverse or modify the judgment in that regard. The injury inflicted is of such a character that we cannot say as matter of law that there was no evidence to sustain the verdict as to the amount of damages awarded.

The judgment of the trial court is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.

## On Application for Rehearing.

THURMAN, J.   On application for rehearing appellant makes the point that the court failed to pass upon certain assignments of error relating to the admission of expert testimony over appellant's objection.   It is contended that the hypothetical question propounded by respondent to the physician, Dr. Clark, assumed facts not supported by the evidence. It requires an extremely technical and narrow interpretation of the evidence to justify appellant's contention.   In any event, we are of opinion that, even if the evidence admitted was subject to the technical objection made, it was rendered entirely harmless by appellant's cross-examination.   Appellant's hypothetical question on cross-examination covered the facts as appellant conceived them to be, omitting the facts which appellant contends were improperly included in respondent's question.   Nevertheless, the answer of the witness was substantially to the same effect.   We have reiterated time and time again that technical errors, unless clearly prejudicial, should be disregarded.   This is a positive mandate of the statute, and prejudice will not be presumed.

The application for a rehearing is denied.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.