## McDONALD v. UNION PACIFIC R. CO.

No. 6904.   Decided April 5, 1946.   (167 P. 2d 685.)

See 5 C. J. S., Appeal and Error, sec. 1763; 20 Am. Jur., 1101. Use of word "satisfaction" in instructions in civil cases relating to degree of proof, note, 147 A. L. R., 380; see also, note, 93 A. L. R., 161.

*Willard Hanson* and *Stewart M. Hanson,* both of Salt Lake City, for appellant.

*H. B. Thompson, Robert B. Porter, W. Hal Farr,* and *B. P. Leverich,* all of Salt Lake City, for respondent.

PRATT, Justice.

The issues upon this appeal are founded upon errors alleged to have been made by the lower court in its refusal to give requested instructions, and also in the instructions to the jury that were given. Appellant complains that his requests numbered 3, 4, 6 and 7 were erroneously refused. Instructions numbered 8 and 11, as given, are also criticized by appellant.

The action is one in damages for negligence, and is founded upon the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq. Appellant, Lyle M. McDonald, was an employee of respondent, Union Pacific Railroad Company, and was engaged, at the time in question, in greasing one of respondent's engines in respondent's roundhouse. No issue exists before this court as to the Employers' Liability Act being applicable. The engine was standing partly over a pit used for greasing and repair purposes. The pit had removable rails and removable crossing boards to enable it to be so used. The employee was using a grease gun attached to a hose which, as he moved about, dragged behind him. The gist of the employee's action lies in the allegations found in paragraph 7 and part of paragraph 8 of his complaint. They read:

"7. Plaintiff further alleges that the said defendant had carelessly and negligently removed the rails at the side of said covering and had carelessly and negligently permitted the same to remain along and

near said covering and had carelessly and negligently left the rails in such position near said covering that there was great and grave and imminent danger of persons who passed over said covering and in front of said engine and who were using said grease gun aforesaid of catching the rubber hose of said grease gun onto said rails, all of which defendant well knew or in the exercise of ordinary care should have known.

"8. Plaintiff further alleges that while he was doing said work aforesaid and while passing over said platform and in front of said engine the rubber hose attached to said grease gun which he was then and there carrying caught upon one of said rails causing said hose to become taut and plaintiff was thereby suddenly and violently jerked and caused to lose his balance and was thereby and by reason thereof caused to fall from said platform into said pit, * * *."

The railroad company included as a defense allegations of contributory negligence. The jury returned a verdict of no cause of action. This appeal resulted.

Appellant's requested instructions 3, 4, 6 and 7 are rather lengthy. They will not be quoted here.

Request No. 3 in effect says: if the jury finds

"from a fair preponderance of the evidence that respondent was negligent as alleged in the complaint (setting out the details of the allegations quoted above) respondent is liable to appellant."

Request No. 4 sets out respondent's claim of contributory negligence and then proceeds to tell the jury that respondent must establish its affirmative claim by a fair preponderance of the evidence. This is followed in detail with the effect of various possible findings, as to either party or both being negligent.

Request No. 6 declares a duty upon the part of respondent to maintain a reasonably safe place for appellant to perform the work, and that appellant had a right to assume that respondent had lived up to that duty. There is also included a charge that appellant was not under any duty to inspect respondent's premises to see if they were maintained in a reasonably safe condition.

Request No. 7 is somewhat uncertain as to whether or not it is intended in part as an actual determination of

facts as adduced by the evidence, but it purports to declare that respondent is negligent if it allowed the removed rail to remain in position to catch the rubber hose trailed by appellant in the performance of his duties in greasing the engine. The request is one sentence of twenty-nine lines.

So much for the substance of the requests.

In the lower court's instruction No. 8 this sentence appears:

"Therefore, in order for plaintiff to recover damages it is necessary that he prove to your *satisfaction* by a preponderance of the evidence that the defendant failed and neglected to use reasonable and ordinary care to furnish the plaintiff a reasonably safe place in which to perform the duties of his said employment at the time in question and that such failure and neglect on the part of defendant was the proximate cause of the alleged accident." (Italics ours.)

Appellant takes exception to the use of the word "satisfaction."

The lower court's instruction No. 11 contains this sentence:

"You are instructed that it is the duty of every employe to exercise reasonable care for his own safety and that he must at all times exercise reasonable care to look and watch where he is about to step."

Appellant takes exception to the requirement that the employee must look and watch where he is about to step.

Appellant has discussed his errors covering the lower court's refusal to give the requested instructions as a group. The substance of his objection is that, by such refusal, the lower court failed to submit to the jury appellant's theory of his case. There is no question that appellant is entitled to have his theory of the case submitted to the jury—that need not be argued. *Pratt* v. *Utah Light & Traction Co.*, 57 Utah 7, 169 P. 868; *Morgan* v. *Bingham Stage Lines Co.*, 75 Utah 87, 283 P. 160. But did the court fail in this respect?

Appellant's theory can be no broader than his pleadings. We have quoted the pertinent allegations thereof above. Consider them in the light of the following quotations:

First, from appellant's brief as to what his proof shows:

"As set forth in the statement, appellant's evidence showed that he had been employed by the respondent from about the 6th day of July, 1943, and that on the 23rd day of July, 1943, that while carrying the grease gun and dragging the hose attached thereto from one side of·the engine to the other side, the loop of the hose caught upon a rail which had been removed from the platform or walkway and which had not been replaced, thus causing the appellant to be violently jerked and thrown into the open pit whereby he was injured."

Next the court's instructions upon this version of the case:

"These instructions, though numbered separately, are to be considered and construed by you as one connected whole. Each instruction should be read and understood with reference to and as a part of the entire charge and not as though one instruction separately was intended to present the whole law of the case upon any particular point. For that reason you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions, as a whole, and to regard each in the light of all the others. [Instruction No. 21—a stock instruction.]

\* \* \* \* \* \*

"\* \* \* In addition to the foregoing, plaintiff alleges in his complaint that the defendant had removed one of said rails and had negligently permitted the same to remain along and near said covering and had negligently left said rail in such a position near said covering that there was great and grave and imminent danger of persons who passed over said covering and in front of said engine, who were using said grease gun aforesaid, of catching the rubber hose of said grease gun on to said rail, all of which defendant well knew or in the exercise of ordinary care should have known.

"Plaintiff further alleges in his complaint that while he was doing said work aforesaid and while passing over said platform and in front of said engine, the rubber hose attached to said grease gun which he was then and there carrying, caught upon said rail, causing said hose to become taut, and plaintiff was thereby suddenly and violently jerked and caused to lose his balance and was thereby and by reason thereof caused to fall from said platform into said pit. \* \* \*

"Except as to the facts admitted by the pleadings, as first above stated, the defendant in its answer to plaintiff's complaint denies each and every allegation therein and hereinabove set forth. [From instruction No. 1.]

\* \* \* \* \* \*

"\* \* \* if you find from a preponderance of the evidence that the defendant failed and neglected so to do (furnish a reasonably safe place to work) as alleged in plaintiff's complaint and as set forth in Instruction No. 1, then the defendant would be guilty of negligence and liable to plaintiff. \* \* \*" [From instruction No. 6.]

Keeping in mind that we are now discussing whether or not appellant's theory of the case was submitted to the jury, and are not discussing how well it was submitted, it is believed that a comparison of all the quotations, so far set out in this opinion, will disclose to the reader that the court follows rather closely the alleged facts and the pleadings. The respondent founds its allegations of contributory negligence upon a belief that appellant was careless in failing to watch where he was stepping. This phase of the case the court covered principally by its instructions 10, 11, and 13 (not quoted). Appellant's requests 3, 4, 6 and 7 are founded upon appellant's theories of the issues as between the parties both on negligence and contributory negligence. The court covered these theories as indicated, but, of course, did not agree with appellant in the detail of expounding them. This disagreement raises the question of how well did the court submit those theories —and we turn to appellant's objections to the instructions given to determine that question.

What about the use of the word "satisfaction" in instruction No. 8? What would satisfy one juryman might not satisfy another at all. Furthermore there is no adequate way of determining "satisfaction" upon a basis of what would satisfy men generally. It is subject to the idiosyncrasies of the individual and, when applied to an individual, indicates that he is emotionally in harmony with what he is doing—in other words that his mind feels in repose as he acts—or, in case of a juryman, as he

decides. Some courts have adopted the view that the word calls for greater proof than is required by a preponderance of the evidence rule (see annotation 147 A. L. R. 380). This view, however, seems fallacious in that, apparently, it assumes there is no such a thing as being "satisfied" with less than a preponderance of the evidence—or, for that matter, with a preponderance of the evidence.

In the opinion of this court, the word "satisfaction" is not capable of definition in terms of a quantum of proof or of evidence. Its use does not imply any measurable limitations as to proof. It is personal to each individual and deals only with his emotional reactions. Its use, by the lower court, cannot be said to have required either greater or less proof than a preponderance of the evidence—which the court repeatedly stated was the rule for deciding the issues. This court is of the opinion that there was no prejudice in its use.

Now as to the quotation from instruction No. 11: ■

The principal conflict in evidence in this case centers upon two things: (1) Whether or not the grease gun hose did catch upon the rail; and (2) Whether or not appellant walked or backed off into the pit.

(1) Appellant and his witness upon that subject maintain that one of the removable rails was out of its place over the pit and was along side thereof. They maintain that the trailing loop of the hose caught on that rail. Respondent's witnesses maintain that the rail was not out of place.

(2) Here the conflict is centered principally upon whether or not appellant at the time of the accident or shortly thereafter made statements to the effect that he walked off or backed off into the pit without looking. His fellow workers of that time testified for respondent that he did. Respondent presented a written statement of appellant's made to an agent of repondent to the effect that he backed into the open pit. Appellant denies that he made such a statement even though his signature appears upon the paper containing it.

Appellant concedes that he knew all about the pit and that the rails were removable, and had at times been removed, for purposes not pertinent to any work then being done upon the engine appellant was greasing. Furthermore, he testified that he gave no thought to the pit; and that he could not remember whether or not he saw the rail just before the accident.

In a rather general way this is the evidence which is the foundation of the instructions given by the lower court, including No. 11, part of which is quoted above and objected to by appellant.

Even assuming that the lower court went too far in applying "to look and watch" where he was stepping as a foundation or reasonable care for the employee in this case, this court is of the opinion that it was not a prejudicial error.

There are two versions of the case either one of which the jury might have taken as a result of the evidence. One is the theory of appellant's complaint: That the grease hose caught on the rail and jerked him into the pit. The other is the theory propounded by respondent as being appellant's version of the case immediately after the accident: That he walked or backed into the pit while attempting to guide the grease hose loop trailing behind him.

Thus the question submitted to the jury was in effect this: No one having seen the actual fall and its cause, do you believe the rail was out of place and the hose caught thereon or do you believe that appellant walked or backed into the pit while trying to guide the hose. If the jury believed that appellant was jerked into the pit by a caught hose, the instruction as to looking and watching certainly could not have influenced them. On the other hand, for the jury to conclude that appellant walked or backed into the pit, they would have to accept as true the statements attributed to appellant immediately after the accident to the effect that he was not looking and stepped into the pit. Those statements were the foundation of respondent's charge of negligence on the part of appellant, and if accepted as true, excluded the

idea of appellant's having been jerked into the pit by the hose—that is to say excluded the idea of negligence on the part of respondent—thus it would have made little or no difference whether or not such a stepping into the pit was considered a negligent act or a non-negligent act on the part of appellant—in either case it would not have affected the outcome of the case.

The judgment of the lower court is affirmed. Costs to respondent.

LARSON, C. J., and McDONOUGH and WADE, JJ., concur.

WOLFE, Justice (concurring).

I concur in the conclusion that the court amply presented appellant's theory of the case.

I rather think we have dignified the objection as to the phrase beyond what it deserves. Had the court instructed the jury that in order to recover damages it was necessary that the jury be satisfied by a preponderance of the evidence that the defendant failed etc., it would seem to me to entail the same idea as did Instruction No. 8. Such phrases as "the plaintiff must establish by a preponderance" or "must satisfy you by a preponderance" etc., are often used. And the minds of the jurymen should be "satisfied" or "convinced" or "be set at rest" whichever way it may be expressed by a preponderance of the evidence. It is axiomatic that he who asserts a claim or defense has the burden of persuasion as to the merits of his claim or defense. If the phrase "prove to your satisfaction" is construed to mean "persuade you," as I think it should sensibly be read, I see no objection. After the jurymen discuss, ponder over and weigh the evidence and uncertainty is removed their "minds are made up"—a very ancient and homely way of expressing satisfaction with their mental state in regard to a question. And if by a preponderance of the evidence a juryman's mind is made up in favor of the one who asserts the claim then the claimant has proved his claim to the satisfaction of

such juryman. To persuade by a preponderance of evidence means that taking the evidence quantitively and qualitatively and considering all the factors which affect credibilty, the evidence has carried that measure of conviction that will satisfy the jury, i. e., the requisite number of individual jurymen that the claim is a meritorious one and that the claimant should prevail in his claim for damages or his claimed defense. The chief objection to the court's use of the phrase "prove to your satisfaction" might be that it is reduntant. In instruction No. 4 the court defined "preponderance of evidence" as "the greater weight of the evidence that which is more convincing as to its truth." This has in it somewhat the idea that the jury should be satisfied as to the truth if the greater weight leans toward the claimant, yet I can conceive of a case where the jury might be *more* convinced that the evidence of one side is nearer the truth than that of the other side and yet not feel that the evidence satisfied them as to the right to recover. I do not think the word "satisfaction" used in this sense, deals with "emotional reactions." It must mean that he is satisfied with the result of his thinking and that itself is in the realm of reasoning rather than in the realm of emotions. Satisfaction in the sense used does not mean a feeling of satisfaction which is somewhat equivalent to well being but rather intellectually satisfied although the state of being intellectually satisfied may bring on a "feeling of satisfaction" which has an emotional cast. The world of feeling and intellect blend into each other. Also I can see no objection to the word because it has a personal meaning to each juryman; nor that there is no way of determining "satisfaction" upon a basis of what would satisfy men generally. True it is a subjective test, but a subjective test based on experience in life. To an extent although perhaps not as subjective are the tests of a "prudent man" or a "reasonable man," and many like tests the law must devise because it cannot apply mathematical standards.

I also concur in the finding that there was nothing prejudicial in Instruction No. 11. Perhaps it was too

dogmatic or attempted a refinement of what constituted contributory negligence to instruct that "at all times must use reasonable care to look and watch where he [plaintiff] is about to step." If this is equivalent to a statement that the plaintiff must at all times "look and watch where he is about to step" that may, under some circumstances, be impossible although that would seem to be a rare occasion. But in this case as pointed out in the main opinion the instruction was aimed at a conclusion that if the jury believe the evidence that the plaintiff walked or backed off of the platform into the pit such conclusions would take out of the case the version that the grease hose caught on the rail causing the plaintiff to be jerked into the pit.