## STARTIN v. MADSEN.

No. 7594.   Decided November 21, 1951.   (237 P. 2d 834.)

632

See 70 C. J., Witnesses, sec. 478. Dead man's statute, waiver of. 58 Am. Jur., Witnesses, secs. 355-362; 159 A. L. R. 411.

*Christenson & Christenson,* Provo, for appellant.

*Backman, Backman, & Clark,* Salt Lake City, for respondent.

CROCKETT, Justice.

Eliza Startin, sister of the decedent James Madsen, sued his estate for services rendered in giving personal care, housekeeping, practical nursing and supplying food and provisions to him for six years just prior to his death. A jury awarded her $4200.

Defendant appeals, claiming the trial court erred: (1) in permitting plaintiff to give certain testimony in violation of the so-called dead man's statute; (2) allowing the jury to consider the value of services performed for Mrs. Madsen (wife of deceased) ; (3) allowing the jury to consider the value of services performed by others in assisting plaintiff; (4) failing to give certain instructions as to defendant's theory of the case, and certain cautionary instructions; and (5) allowing the jury to find the verdict when there was no competent evidence as to the value of plaintiff's services.

Although some of the evidence was controverted, the following is a fair summary of the facts established: James Madsen, brother of plaintiff and defendant, died at 88, having been bedridden and in need of close personal care for the previous six years. His aged wife, Priscilla, was able to do some household tasks the fore part of this period,

but was in need of some care and assistance herself, particularly during the last two years when her memory completely failed her. Plaintiff lived about two blocks away. Her husband also was very ill during part of this time, and although she had to divide her attention between her own home and that of the Madsens, she nevertheless prepared meals for the Madsens, first at their home, and later for several years at her own home, carrying them the two blocks three times daily. Assisted somewhat by her daughter and daughter-in-law, she prepared these meals, bought provisions, cleaned the Madsen home, washed their clothes and linens, bathed Mr. Madsen, changed his bedding, gave him medicine when needed, and otherwise provided comfort and necessaries principally to Mr. Madsen and partially to Mrs. Madsen. Her services became increasingly burdensome as the Madsens grew older. Plaintiff's other brother, defendant herein, and his son also assisted the Madsens some. Upon those facts, the jury verdict of $4200 was rendered.

We discuss the errors assigned in the order listed above:

The so-called dead man's statute, Sec. 104-49-2, U. C. A. 1943, so far as here material, provides that no person asserting a claim adverse to the estate shall testify to any matter of fact equally within the knowledge of the witness and the deceased. In *Burk* v. *Peter,* 115 Utah 58, 202 P. 2d 543, this court recognized that there is a waiver of the incompetency to testify created by this statute where the deceased's representative or witnesses called on behalf of the estate testifies, and to the extent which such witnesses testify as to facts or transactions, testimony otherwise prohibited by the statute may be received. The limitation is that the incompetency is waived only as to the particular matter opened up by the personal representative or his witnesses. The testimony of the plaintiff complained of in the present case involved a description of decedent's physical condition and need for assistance during the period of his illness, the amount of assistance rendered by the

plaintiff, and the question of whether plaintiff had been compensated therefor. In an effort to minimize the services rendered and the need for assistance on the part of the deceased, and to show payment for any services rendered by the plaintiff, these matters were fully covered in defendant's testimony. Accordingly, the executor waived the incompetency of the plaintiff and it was therefore proper to permit her to testify as to these matters in rebuttal.

There was no error in allowing the jury to include the value of services rendered to Priscilla Madsen, wife of the deceased, since nothing furnished to Priscilla ■ in this case could be construed to be anything but necessaries, the expense of which her husband and his estate are obliged to pay. *County of Brown* v. *Siebert,* 175 Minn. 39, 220 N. W. 156.

Likewise, it was not error to permit the jury to charge Madsen's Estate with help others gave plaintiff in performing her duties to the Madsens. The benefit ■ of any assistance procured by her would inure to her and not to the decedent unless it were expressly made to appear that such was the intent of the parties.

It seems unnecessary and inadvisable to treat in detail the assigned errors relating to the giving and refusal to give instructions. The instructions should not be susceptible of misconstruction as either comments on the evidence or arguments for either side of the case. It ■■ was the duty of the court to cover the theories of both parties in his instructions. *Martineau* v. *Hanson,* 47 Utah 549, 155 P. 432; *McDonald* v. *Union Pacific R. Co.,* 109 Utah 493, 167 P. 2d 685. If the instructions are considered as a whole, as they must be, *Walkenhorst* v. *Kesler,* 92 Utah 312, 67 P. 2d 654; *Redd* v. *Airway Motor Coach Lines,* 104 Utah 9, 137 P. 2d 374, the court adequately discharged this duty and fairly presented the issues to the jury.

Finally, we approach the problem which seems to be of critical importance in the case, that is, defendant's conten-

tion that the judgment cannot stand because there is no competent evidence of value of plaintiff's services.

We must keep uppermost in mind the provision of our statute, Sec. 104-14-7, U. C. A. 1943:

"The court must * * * disregard any error * * * which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

See Rule 61 U. R. C. P. to the same effect. Before the appellant is entitled to prevail, he must show both error and prejudice; that is, that his substantial rights are affected and that there is at least a fair likelihood that the result would have been different. *Boyd* v. *San Pedro, L. A. & S. L. R. Co.,* 45 Utah 449, 146 P. 282. Even if incompetent evidence is admitted, unless it is harmful to defendant, it is not ground for reversal. *Thomas* v. *Ogden Rapid Transit Co.,* 47 Utah 595, 155 P. 436. See also *In re McCoy's Estate,* 91 Utah 212, 63 P. 2d 620; *Christensen* v. *Johnson,* 90 Utah 273, 61 P. 2d 597; and *Davis* v. *Heiner,* 54 Utah 428, 181 P. 587.

Being aware of that thought, we consider the contention regarding the insufficiency of evidence of value. The only such evidence in the record was the testimony of one Mrs. Mary Hopkins, which defendant assails as incompetent. She first identified herself as a practical nurse of 27 years experience in that county (Utah County); she testified that she thought she would be acquainted with charges made in Provo, the County seat, for practical nursing. Over the objection of counsel for the defendant, she was allowed to answer the following hypothetical question:

"In the event you were called into a case where an aged person was bedridden and you had to give them a service of bathing them and changing their bedding and getting their meals and giving them their medicine and watching them through the day would you have an opinion as to what the charge would be?"

She answered that she would charge $7.00 per day for one patient or $50.00 per week for two, in addition to her board, room and laundry.

It must be said that we do not defend nor justify the way in which the question was put except to say that the record shows that the witness was exceedingly difficult to get any evidence from.

With respect to the question of proof of value of the services of plaintiff, we assert the following propositions:

(1) The services rendered were of such a nature that the jury could have assessed the reasonable value thereof without any special evidence of such value; (2) Even if it should be conceded that the testimony of the witness Mrs. Hopkins was incompetent, it was not prejudicial to the defendant; (3) Her testimony, although not of the most desirable quality, was not wholly incompetent.

Let us take a look at the general aspect of this case and the verdict which we are asked to overturn. The jury found the issues for the plaintiff and we, therefore, assume that they believed her evidence. She rendered the services over a period of six years, approximately 2,190 days. She was awarded $4,200, about $1.92 per day. A jury is made up of practical people who have common sense and judgment. They were entitled to take into consideration their knowledge acquired in the every day affairs of life in placing a value upon these services. In 58 Am. Jur. "Work and Labor", Sec. 63, p. 560, it is stated:

"* * * The jury may from their knowledge of business and the value of labor, in assumpsit for work and labor, find a verdict for the value of the work done upon request without an express contract, notwithstanding *there is no evidence of the worth of labor* at the time and place the work was performed." (Emphasis added.)

This rule would apply to the type of work the plaintiff did. The term "practical nurse" is just another name for ordinary housekeeping and the personal care and attention which every one gives to sick people in their own homes;

that is, to prepare the meals, feed, bathe, clothe, change their clothing and their bedding and attend to their needs. There is nothing particularly technical nor professional about it. Every person of ordinary intelligence and understanding knows what that work consists of and has some idea as to its value. Surely, it was worth $1.92 per day if it were worth anything.

The testimony of Mrs. Hopkins was to the effect that such services were reasonably worth $7 per day. On that basis for six years the verdict would have been for $15,330. And even if such an award had been only for two and one-half years, the shortest possible time for which any award at all could have been made even under the defendant's evidence, the amount would have been $6,384. It is obvious that the jury did just what it is entitled to do; used ordinary prudence and judgment in assessing the damages. They plainly did not base their verdict on the evidence of Mrs. Hopkins at all and such evidence was in no way prejudicial to the defendant. For that reason, there should be no reversal.

Let us now, as an additional proposition, consider the competency of Mrs. Hopkins' testimony. She was called as an expert to give evidence regarding the value of the services. Although her testimony was as to what she personally would charge, the only reasonable inference from her evidence is that her charges would be the ordinary and reasonable charges for such services in that locality because she certainly would not be testifying that she charged any unreasonable amount. It would comport with common sense and reason to allow the jury the latitude to infer from her testimony that the charges she personally made were the ordinary, usual and reasonable ones being made for such service according to her knowledge.

Just who is and who is not an expert, and the requisites and qualifications thereof, are matters which are relative to the facts of the particular case, and the subject upon which the witness is called to give testi-

mony. See II Wigmore on Evidence, 3d Ed. Sec. 555, for a discussion on this subject. He says at p. 634:

"The capacity is in every case a relative one, i. e. relative to the topic about which the person is asked to make his statement. The object is to be sure that the question to the witness will be answered by a person who is fitted to answer it * * *"

At p. 640, Sec. 559, he announces the rule:

"* * * No special experience shall be required unless the matter to be testified to is one upon which it would clearly be presumptuous, under the circumstances of the case, for a person of only ordinary experience to assume to trust his senses, for the purposes of his own action in the ordinary serious affairs of life."

Mr. Wigmore further points out that experts may vary greatly as to the degree of expertness and that if the evidence isn't particularly good the opponent may by cross-examination expose its meager quantity or poor quality. In *Mussinon's Adm'r* v. *Herrin,* 252 Ky. 495, 67 S. W. 2d 710, 714, the plaintiff had cared for the decedent for 11 years, both when she was sick and well, and had helped pay bills, etc. On appeal, it was contended that the trial court erred in allowing evidence of certain witnesses to come in relating to the value of the services rendered. Said the court:

"* * * certain witnesses were asked to state the value of these services, and they would preface their answer by saying, 'I hardly know,' and other expressions of similar meaning, but finally gave their opinion as to the value of the services. This was not a subject on which expert testimony was required or necessary, and the fact that the witnesses did not technically qualify is not material. The value of such services rendered by appellee is a matter of common knowledge, and the jury, no doubt, were as able to place a value on these services as the witnesses were. We do not deem this testimony prejudicial to the substantial rights of appellant."

In *Craig* v. *Toteve,* 107 Colo. 254, 110 P. 2d 1117, it was contended that the testimony of a practical nurse as to the reasonable value of services of those in that profession was

erroneous where she hadn't been engaged in that profession for about three years, although she had previously been so engaged for a long time. The court correctly observed that the objection went only to the weight of the evidence and not to its competency. In *First National Bank* v. *Owen*, 177 Miss. 339, 171 So. 4, 6, the court in speaking of similar services, said:

"Facts in respect to services of this kind and knowledge of the value thereof are such as come *within the general experience and observation of all sensible persons*, and it requires no skilled or expert witness to give evidence in regard thereto." (*Emphasis added.*)

See also *In re Estate of Baker*, 144 Neb. 797, 14 N. W. 2d 585; *In re Dvorak's Estate*, 213 Iowa 250, 236 N. W. 66; *Wandling* v. *Broaddus*, Mo., 10 S. W. 2d 651. 20 Am. Jur., Evidence, Sec. 386, p. 349, states the rule:

"In an action to recover the value of services rendered under an implied contract, evidence of what others received for like services may properly be considered."

Under the above authorities, Mrs. Hopkins was properly permitted to testify as to how she would evaluate the services described to her in terms of what she would charge for similar work. Her testimony, although it may not have been just what one might desire, is not entirely incompetent and valueless. If she had actually lacked knowledge of the charges generally made for such work in that locality, the defendant certainly could have laid that fact bare by cross-examination. This he declined to do, apparently not wanting to bolster up the weakness in the plaintiff's evidence. Perhaps the defendant should not be censured for not doing so, but to the court this lawsuit is something more than a game of wits. A reversal would serve no useful purpose except to further delay the payment to this elderly lady of money to which a jury has found that she was justly entitled for taking care of the decedent when he was in dire need of her services and when

others found it convenient to leave such duties to her. In considering the question of this evidence on the motion for a new trial, the trial judge frankly expressed his opinion that he committed error in receiving the testimony, but upon mature reflection did not believe that it resulted in prejudice to the defendants. We agree that there was no prejudice and therefore affirm the judgment. Costs to respondent.

WADE, J., concurs.

WOLFE, Chief Justice (concurring).

I concur, but since I am not prepared to subscribe to all the reasons set out by Mr. Justice CROCKETT, I shall add language which will serve to limit my reasons. The hypothetical question was not accurately nor artfully drawn but the fact that it called for answer as to what "you" would charge as a practical nurse instead of asking what would be the reasonable charge could not under the circumstances be prejudicial. Certainly, it must be assumed that Mrs. Hopkins was charging and would charge the reasonable going rate. The jury must have so considered it. We cannot ask for perfection. The time of the courts, of counsel and juries is too valuable to be reversing cases on trivia. I do not see that the answer to the hypothetical question could have been prejudicial.

Even if a hypothetical question calls for an answer within the ken of the jury because it deals with common facts of life, it can do no harm. If the value of hourly rates of day labor, for instance, is known to the jury, how can it harm if a person testifies as to that? I doubt whether the rate of pay for a practical nurse in the community is a fact that can be assumed to be known to the people generally in that community. If so, giving that portion of that community which sits on the jury, evidence of a fact which they already assumingly know can do no harm. The right to a jury trial does not mean that the jury cannot be permitted to pass on

a fact presumably within its knowledge without benefit of evidence thereon.

I think some technical objections could have been urged to support a contention that performance of services for James Madsen at his special instance and request would not permit evidence of services rendered to his wife, Priscilla. I am not prepared to say that the conclusion of the main opinion that the common law and, for that matter, the statutory duty of support of the wife by the husband may not in this case have been drawn into the scope of "his special request", as applicable to services of the same nature performed for the wife since there was such close connection and propinquity of the services to both. They may be considered as a unit. But I register a caveat. It may be only in a case such as this where the services are rendered to both spouses at the same time and as a unit that both may be covered by an allegation of performance at the special request of one spouse unless it is alleged that services to both were performed at the request of the spouse sought to be held. I doubt whether one could show services only to the wife or to both during different periods under an allegation that services were rendered at the special instance of one spouse. I should think in such event the defendant might be mislead unless in each case he is under obligation to move to make the complaint more definite in that regard absent which the defendant waives the matter.

I agree that services performed by others in assisting respondent were under the facts of this case performed for and on behalf of respondent and to aid her.

McDONOUGH, Justice (concurring).

I concur in the opinion of Mr. Justice CROCKETT except that on the matter of Mrs. Hopkins' answer to the hypothetical question I limit my concurrence to the proposition that the admission of such testimony was not prejudicial.

HENRIOD, Justice (dissenting).

I dissent. By the simple and easy device of asserting that the testimony of one Mrs. Hopkins, practical nurse, was not prejudicial, the main opinion virtually abolishes the rules of evidence relating to proving value of services rendered by others, when elicited by means of a hypothetical question. The opinion in effect rules that the answer of either an expert or non-expert witness to a hypothetical question, objectionable as to form, content and character of witness to whom put, is unobjectionable because such answer is not prejudicial. It establishes a precedent in the opinion of the writer that will return to plague us, and which will result in future fine distinction, apologetic attempt to explain, or outright reversal. It would appear that henceforth the practitioner need not hesitate, in calling almost anyone, as an expert or non-expert, to answer a hypothetical question, objectionable in form and content, as to the value of services rendered by another, irrespective as to place rendered. Such evidence would be unobjectionable in the light of this decision because not prejudicial. The opinion, it is believed, points up the danger inherent in terminology, which too frequently may be a monster that, by nibbling at our principles well might consume them all.

Careful analysis of this opinion reflects a decision based on many assumptions. Among others, the opinion assumes that since Mrs. Hopkins knew about values in Provo, the county seat (a thriving industrial and commercial center with thousands of people) the same values must obtain in Lake Point (an almost uninhabited agricultural area many miles away); that since our statute (104-14-7) says

"The court must * * * disregard any error * * * which does not affect the substantial rights of the parties",

the error committed here of necessity must not have affected substantial rights; that since Mrs. Hopkins' testi-

mony, if believed, would have justified a larger verdict, the jury

"plainly did not base their verdict on the evidence of Mrs. Hopkins at all";

that although the jury thus ignored Mrs. Hopkins, it may have paid attention to her because

"it would comport with common sense and reason to allow the jury the latitude to infer *from her testimony* that the charges she personally made were the ordinary, usual and reasonable ones"

and that "Mrs. Hopkins was *properly permitted to testify*" and that "her testimony is not entirely incompetent and valueless"; that since counsel for defendant failed to cross-examine Mrs. Hopkins, on inadmissible testimony, which he had a perfect and lawyer like right not to do, he must have been derelict in some undefined duty to cure the error committed; that since

"a reversal would serve no useful purpose except to further delay payment to this elderly lady of money to which a jury has found that she was justly entitled",

the jury couldn't possibly have found otherwise and a new one could not possibly arrive at a different result.

Let us look at the record unsympathetically. The respondent called Mrs. Hopkins, a practical nurse with 27 years experience, to testify. It does not appear whether she had heard the other witnesses testify as to what respondent did or did not do in the way of furnishing services. Over the repeated and strenuous objections of counsel for appellant, all overruled by the trial court, she was allowed to answer the following hypothetical question:

"In the event *you* were called into a case where an aged person was bedridden and *you* had to give them a service of bathing them and changing their bedding and getting their meals and giving them their medicine and *watching them through the day* would you have an opinion as to what the charge would be?"

She answered that she would charge $7 per day for one patient or $50 per week for two, in addition to her board, room and laundry. Appellant's counsel moved to strike such testimony, but the trial court insisted on admitting it. On motion for new trial the admission of such testimony was strongly urged as error, and in a memorandum decision the trial judge frankly admitted that he had committed error in permitting this testimony to stand, adding, that he felt appellant was not prejudiced because, considering her testimony, the jury could have rendered a verdict for a much larger amount and therefore "could not have considered *for any purpose* the questioned testimony".

This dissent agrees with the trial court that admitting such testimony was error, but does not agree it was unobjectionable. If Mrs. Hopkins be treated as a non-expert, her testimony was inadmissible for the reason that it cannot be elicited by way of a hypothetical question. 20 Am. Jur. 647, Sec. 774. If she be treated as an expert, her testimony was equally inadmissible, since her answer was not responsive to a proper hypothetical question, she having testified only as to what *she* would charge for *her* services in an *unidentified community*—quite obviously having no probative value as to the usual charge in a designated community by persons having her qualifications. For these reasons alone her testimony was inadmissible.

Furthermore, the testimony well may have been inadmissible because of the form of the hypothetical question. It failed to include facts adduced at the trial and included facts not in evidence. Nothing appeared therein as to whether the charge was customary in the community involved. *Love* v. *Richardson*, Mo. App., 61 S. W. 2d 220. No reference was made as to a division of time between caring for an ailing husband, and simultaneously caring for an ailing brother and an ailing sister-in-law. On the other hand the question included watching of the patient through the day, a fact which is completely negatived by the evi-

dence. Although we have said in *Johanson* v. *Huntsman,* 60 Utah 402, 209 P. 197, that if a litigant's theory is fairly incorporated therein, a hypothetical question properly may include fewer facts than those adduced at trial, it is urged that the question put in this case involves a deviation from fact similar to that adverted to by us in *Caperon* v. *Tuttle,* 100 Utah 476, 116 P. 2d 402, 135 A. L. R. 1399, and should constitute prejudicial error. See also 20 Am. Jur. 662, Sec. 788.

Although the majority opinion says that Mrs. Hopkins' testimony was not entirely incompetent and valueless, and that

"Mrs. Hopkins was properly permitted to testify as to how she would evaluate the services described to her in terms of what she would charge for similar work",

the authorities do not seem to bear out such assertions, and her testimony seems clearly to be inadmissible. We therefore meet head-on the remaining question as to whether the testimony was prejudicial. If the testimony given by Mrs. Hopkins, in answer to the hypothetical question put to her in this case, is not prejudicial, it is difficult to conceive how any response to any hypothetical question by any witness, expert or non-expert, could be prejudicial. We recognize the principle that the trial court's ruling on the matter of prejudice has an inviolate sanctity unless such ruling appears reasonably to affect the substantial rights of a party, but can we subscribe to a principle that says error is not prejudicial simply because a trial judge says it is not? The only evidence introduced as to value was Mrs. Hopkins' inadmissible testimony. The record reveals repeated and strenuous objections thereto by counsel, and repeated overruling of such objections by the trial judge, who insisted on admitting the testimony. This well may have underscored and emphasized her testimony adding particular significance thereto. It is reasonable to believe that the veniremen may have felt that the court's insistence on plac-

ing such testimony before them magnified and emphasized its importance, requiring that it be given greater weight, in which event there is no question but what appellant's substantial rights were affected.

Lest we establish a precedent for the future which seriously might interfere with the substantial rights of litigants by use of the easy and magic words "not prejudicial", in this case we should do it the hard way and return it for a new trial by employing the difficult and unsympathetic word "prejudicial" which the writer believes more nearly describes the procedure adopted for the introduction of Mrs. Hopkins' testimony. *Jensen* v. *Utah Ry. Co.*, 72 Utah 366, 270 P. 349.